GLOVER, Mayor, *v.* CITY COUNCIL OF COLUMBUS *et al.*

(Division A. June 11, 1923.)

[96 South. 521. No. 23516.]

1. PROHIBITION. *Mayor exercises judicial or quasi-judicial functions in removing captain of police.*

Mayor of city, in permanently removing captain of police, was exercising judcial or *quasi*-judicial functions, and writ of prohibition would lie to prohibit him from wrongfully exercising his judicial discretion.

2. MUNICIPAL CORPORATIONS. *Mayor authorized to suspend captain of police, but not when suspension was in effect permanent removal before he had assumed office.*

Under Columbus charter, authorizing mayor and council to remove officers appointed by them, and ordinances providing for ap-

pointment of captain of police and providing for suspension of policemen by mayor and report of suspension to the city council, the mayor had power to suspend police captain from duty, but not when suspension was in fact permanent removal immediately after appointment, before the appointee was on duty.

Appeal from circuit court of Lowndes county.

HON. T. B. CARROLL, Judge.

Prohibition proceeding by the City Council of Columbus and others, against A. Y. Glover, Mayor of Columbus. From a judgment ordering the issuance of the writ, defendant appeals. Affirmed.

*W. D. Houston, Sr. and Jr.,* for appellant.

The question here is merely the power of the mayor to suspend from duty the captain of police. The captain of police is not such a public officer as is contemplated by section 175 of the Constitution. The suspension here was not "for wilful neglect of duty or misdemeanor in office." The captain of the police police was not removed at all but only suspended and was not suspended on account of "neglect of duty or misdemeanor in office," at all. He is neither a constitutional nor an elective officer, nor has he any fixed term of office. He is not even a public official at all, but merely an employee of the city appointed by the mayor and council, with specific power in the mayor to suspend him. Neither his salary nor his powers or duties are fixed or prescribed by statute, but all are fixed or prescribed by the mayor and council, and he is subject to the direction and supervision of the mayor in the performance of his duties. See pages 88, 102, 103, and 107, Ordinances of City. The City ordinance, section 49, page 90, makes it the mayor's duty "to suspend from duty any policeman when he thinks the public interest requires it," of which he is left the sole judge absolutely and without limitation and without cause. While section 16, charter, and section 50, Ordinance says: "He shall report any

appointment or suspension of policemen to the city council as soon as practicable, giving his reasons for his action," it stops there without saying the council can overrule him or re-instate the policeman; and this requirement to report his reasons for his suspension or action to the council, does not constitute a qualification or limitation upon such power of suspension by the mayor. See 28 Cyc. 435, note 97, citing *State* v. *Williamson,* 6 S. D. 119, 60 N. W. 410, specifically deciding this very question under exactly the same language. The case of *McClure* v. *Whitney,* 120 Miss. 350 at 371-6, 82 So. 259, absolutely settled the proposition that this captain of police is not a public officer within the meaning of section 175 of the Constitution of 1890, and that that section does not apply, but that he is a mere employee. In *Beverly* v. *Hattiesburg,* 83 Miss. 342, 35 So. 876, the court held: "An ordinance providing that an employee elected by the municipal board shall not be discharged except upon written charges, has no application to a policeman who was not so elected, but held his position under a commission. In *State ex rel. Guess* v. *Miller,* 88 So. 881-2, this court held that a deputy auditor appointed by the auditor of public accounts was not an officer within the constitution, section 20 or 175, and hence that the Code of 1906, section 236; Hemingway's Code, section 3495, authorizing his removal at the pleasure of the auditor, is valid. See 29 Cyc. 1405, heading, "Officers. Suspension." See also *Sumpter* v. *State,* 81 Ark. 60, 98 S. W. 719; *Allen* v. *State,* 32 Ark. 241; *Ex parte Wiley,* 54 Ala. 226; *State ex rel. Lower* v. *Johnson,* 30 Fla. 433, 11 So. 845; 29 Cyc. 1408 (c), heading, "Removal by Executive and Administrative Officers;" 29 Cyc. 1409 (d), heading, "Removal for Cause." The case of *Trainor* v. *Board,* 15 L. R. A. 95, and notes, pages 96 and 97, is quite applicable here. The court held that "the removal of appointive officers appointed at the will or caprice of the appointing power is not unconstitutional in the absence of any provisions to the contrary, and no charges need be preferred

or notice given to the person sought to be removed for incompetency under a statute authorizing the removal of a person 'when in the opinion of the board he is incompetent;' " citing 1 Dillon Mun. Corp. section 250; Mechem on Pub. Officers, section 454. See also *State* v. *Johnson,* 30 Fla. 433, 11 So. 845.

*John F. Frierson,* for appellee.

The only question in the case is whether the mayor of the city of Columbus had the authority to dismiss and to prohibit the captain of police of the city of Columbus from serving as such after the said captain of police had been duly elected and had qualified. The city of Columbus acts under a special charter, a copy of which was filed as part of the transcript. This charter provides under section 16 on page 17 as one of the powers given to the mayor that he (the mayor), "shall have power when he thinks the public welfare requires, to temporarily increase the police force by appointing additional policemen, and he may suspend from duty any policeman whenever he thinks it necessary, reporting such appointment and suspension with his reasons therefor to the city council as soon as practicable." It seems that this section 50, requiring the mayor to report a suspension to the city council with his reasons therefor, could have no other purpose than that the city council should have the right to review the suspension and either to confirm it or to overrule it, either to continue it or to dismiss further suspension and reinstate the officer suspended. Judge CARROLL in his opinion has so succinctly stated the facts in the case that we quote at length. "The disinterested mind shrinks from the position taken that a man can be prejudiced and deprived of office to which he has been legally elected without trial and without opportunity to make good. The Constitution sets out the reason and the mode for removing an officer. It does not touch on suspension. While called by different names, there is

no difference between removal and a parmanent suspension, for in either event, the man is deprived of his salary and his right to earn it. The use of the word suspension carries with it the idea that it is temporary till there shall be a final determination whether the man shall be removed or not. The suspension here, if effective, is intended to amount to a removal from office. The mayor is not author·ized by the charter to remove from office. . . . If the charter provision giving the mayor the right to suspend be valid, then in that event it being a matter within his discretion, no court has power to control that discretion— even if convinced that the mayor is mistaken in his judg·ment. I do not now attempt to control it. I merely hold that if the two provisions are to stand, they must be harmonized and construed together, and so construed, it means that the mayor has no power to either directly or indirect·ly force the council to elect any one not wanted by them on the penalty of allowing the office to remain vacant unless a man pleasing to him is chosen."

Aside from the above considerations that the mayor had no power or authority to prevent Morton from performing the duties of his office as captain of police, we respectfully submit that Mr. Morton was a public officer and that a public officer cannot be discharged from the office to which he has been elected or appointed except in the manner prescribed by law. The supreme court has decided that the penalty prescribed is mandatory and that the method of removal is exclusive, citing *Runnel* v. *State,* —, S. W. 146; *Hyde* v. *State,* 52 Miss. 665; *Ex parte Lehman,* 60 Miss 967; *State* v. *McDowell,* 111 Miss. 596, 71 So. 867; *Weir* v. *State,* 111 Miss. 599, 71 So. 868; *Lizano* v. *Pass Christian,* 96 Miss. 640, 50 So. 981; *Moore* v. *State,* 45 So. 866; *Mississippi State Board of Health* v. *Matthews,* 113 Miss. 570, 74 So. 417; *Monette* v. *State,* 91 Miss. 662; *McClure* v. *Whitney,* 120 Miss. 350, 82 So. 259; *Ex parte Brown,* 72 So. 924.

Argued orally by *D. W. Houston, Sr.,* and *W. P. Stribling* for appellant and *Jno. F. Frierson* for appellee.

HOLDEN, J., delivered the opinion of the court.

This is an appeal by the mayor of Columbus from an order in vacation by Circuit Judge CARROLL, holding that the suspension from duty of appellee John A. Morton, captain of police of Columbus, by the appellant; Mayor Glover, was null and void, and ordering the issuance of a writ of prohibition against the mayor, prohibiting him from interfering with said John A. Morton as captain of police of Columbus in the discharge of his official duties as such.

The two points urged for reversal by the appellant are: That the writ of prohibition will not lie in such case, and that the mayor was acting within his lawful authority in suspending the captain of police; as is provided in the charter and ordinances of the city of Columbus.

The appellees make the opposite contention: That the writ of prohibition will lie to prohibit the mayor from the unlawful exercise of his power in doing any discretionary or judicial act, such as removing a police captain under him when in his judgment such removal should be made; that the mayor has no authority under the charter or ordinances of the city of Columbus to remove the captain of police from office, nor to suspend him where such suspension is in fact a removal from office. The substance of the controversy is about as follows:

The board of councilmen, acting under an old special charter, appointed John A. Morton captain of police, and the said Morton proceeded to qualify as such officer. At the meeting of the board of mayor and councilmen, which made the appointment, "the mayor announced that he would here and now suspend J. A. Morton as captain of police, and was now reporting to the council the said suspension, and giving as a reason Morton's utter ineffi-

ciency." Immediately after Morton qualified as captain of police, "the mayor announced again in open meeting that he suspended said Morton as captain of police and would not recognize him as such officer, that he would not work in conjunction with Morton, and that some other citizen of Columbus instead of Morton could be selected."

Closely following this, the mayor called a special session of the council to consider his action in suspending said Morton. At this meeting the council "resolved that the city council does hereby overrule the suspension of J. A. Morton as captain of police, and that the said J. A. Morton be and he is hereby reinstated as captain of police;" whereupon the mayor again announced in open session that he suspended Morton as captain of police, which suspension was at a time before Morton had performed or had had an opportunity to perform any of the acts or duties of his office.

Thereupon the council unanimously passed the following ordinance:

"Resolved, that the city attorney be instructed to take legal action in the name of the city council and of the captain of the police, J. A. Morton, as may be necessary to prevent the mayor from interfering with the said captain of police in the discharge of the duties of his office."

Whereupon the petition for a writ of prohibition against the Mayor was filed in this case, and from the order of the court overruling a demurrer thereto and granting the writ against the mayor, this appeal is prosecuted.

We here quote the provisions of the charter and ordinances of the city of Columbus: Under section 20 of the charter, provision is made for the election of officers by the mayor and city council as follows:

"Be it further enacted, that there shall be elected or appointed by the mayor and city council some suitable person who shall be secretary and treasurer, . . . a sufficient number of police to preserve the peace, keep good order, and enforce the ordinances of said city. The mayor

and city council may appoint any other officers deemed by them necessary for the public welfare and said council shall have power to remove from office at their pleasure any officer appointed or elected by them and they shall prescribe the duties of such officers, except as fixed by this act, and fix their compensation and change the same as they may see fit."

Ordinance No. 28, on page 85 of the charter and ordinances, provides:

"The said mayor and city council shall at their first meeting, or as soon thereafter as practicable, proceed to elect and appoint the following officers: A president *pro tempore,* a secretary and treasurer, a city marshal, a street commissioner, a captain of police, assistant chief of fire department, engineer of water works, assistant engineer of waterworks, a sufficient number of police and such other officers as the mayor and city council shall deem necessary to the public welfare."

Under the chapter on "The Mayor," section 49 of the Ordinances, provides:

"It shall be his (the mayor's) duty to suspend from duty any policeman when he thinks the public interest requires it.'

Section 50 provides:

"He (the mayor) shall report any appointment or suspension of policemen to the city council as soon as practicable thereafter, giving his reason for his action."

Section 98 provides:

"The mayor and city council shall designate or appoint one of the policemen of the said city, distinguished for intelligence and efficiency, to be captain of police."

On the first point as to whether the writ of prohibition will lie in the case, we think the lower court was warranted under the law in issuing the writ against the mayor to prohibit him from wrongfully exercising his judicial discretion in permanently removing the captain of police, since such act was the exercise of a judicial or *quasi*-judicial function. *People* v. *Cooper,* 57 How. Prac. (N. Y.) 417.

It is not necessary that the tribunal against whom the writ is sought should be a judicial tribunal. Its purpose is, where no other adequate remedy is provided, to prevent the exercise of judicial or *quasi*-judicial authority by any tribunal whatsoever. *State v. Superior Court,* 40 Wash. 443, 82 Pac. 875, 2 L. R. A. (N. S.) 568, 111 Am. St. Rep. 915, 5 Ann. Cas. 775. See note at pages 940, 941, 942, of 111 Am. St. Rep.; *Speed* v. *Detroit,* 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 842, 39 Am. St. Rep. 555; *State* v. *Toomey,* 27 S. D. 37, 129 N. W. 563. Ann. Cas. 1913D, 325; *Judy* v. *Lashley,* 50 W. Va. 628, 41 S. E. 197, 57 L. R. A. 413; *Crittenden* v. *Booneville,* 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518; 22 R. C. L., section 16, p. 17.

In the case at bar the mayor sought to remove from office the captain of police for certain reasons in his judgment or discretion which made it necessary or proper to remove the officer. This involved an adjudication of the rights of the captain of police by an exercise of the judicial power of the mayor. He had to determine the question of whether or not, under the facts and the law, the captain should be removed. Therefore he was acting in a judicial or *quasi*-judicial capacity in determining that it was necessary and proper to remove the officer.

On the second point as to whether the mayor had authority under the special charter and ordinances of the city to remove the captain of police, we think the charter and ordinances clearly provide that the mayor shall have the power to suspend the captain of police from duty when he thinks it necessary or the public interest requires it. And the charter and ordinances provide furthermore that:

"It shall be the mayor's duty to suspend from duty any policeman when he thinks the public interest requires it.'

Now if the action of the mayor in this case was merely a suspension from duty, we would not be prepared to say that he was not fully authorized to do so. But, looking through the forms and phrases to the substance—that is, looking to the real facts in the case—we think it was not

a suspension but was in effect and in truth a removal from office by the mayor who had no authority by virtue of the charter or ordinances of the city of Columbus to do so; and his act therefore was void.

It seems clear to us the mayor went far beyond his authority to suspend when he peremptorily announced, and reannounced, that the captain of police, Morton, was suspended before he had a chance to qualify and enter upon the duties of his office. The mayor was only authorized to suspend the policeman from duty, and not to remove him from office, which he, in effect, attempted to do, and that too at a time when the policeman was not "on duty," nor had he yet been allowed to commence the performance of his official duties as captain of police.

The suspension by the mayor must be in connection with the performance of some duty or service rendered by the police officer, and the officer had no opportunity to render any service in the case before us. If the mayor alone could suspend without limit and before any duty has been performed by the officer, then he would have the authority, in effect, to annul the appointive power of the board of councilmen. This, we think, was not intended by the municipal law.

The appointive and removal power reside in the board of mayor and councilmen acting as such, and not in the mayor alone. The municipal charter provides that the mayor "may suspend from duty any policeman whenever he thinks it necessary, reporting such suspension with his reasons therefor to the city council as soon as practicable." Evidently the purpose of the law was to require a report from the mayor as to his reasons for the suspension so that the council might pass upon his act by approving it and appointing another to the office, or rejecting it and retaining the suspended officer.

Therefore the case is one where the mayor attempted to remove the police officer and not suspend temporarily; and the permanent suspension, which is tantamount to re-

moval, was ordered before the policeman had commenced to serve "on duty," which, in the language of the charter and ordinances, was necessary before any suspension could take place.

We do not think it was the intent of the charter and laws of the city of Columbus to give this discretionary or arbitrary power to the mayor to permanently suspend or remove a policeman, as was done here, but such power lies only with the board of mayor and councilmen; the mayor voting only in case of a tie.

In view of the conclusion reached above, the judgment of the lower court is affirmed.

*Affirmed.*

SMITH, C. J. (concurring). If the mayor had simply suspended the captain of police temporarily, pending action thereon by the city council, I do not think the writ of prohibition would lie, but instead of simply suspending the captain of police the mayor, under the guise of suspension, is attempting to remove him from office, thereby exercising a power which is either judicial or *quasi*-judicial in its nature, for which reason I am of the opinion the writ will lie. This I understand to be the ground on which the majority opinion proceeds.