CITY OF JACKSON *v.* McLEOD.

(In Banc. Jan. 14, 1946.)

[24 So. (2d) 319. No. 35989.]

**Green & Green** and **Morse & Harper**, all of Jackson, for appellant.

John G. Burkett and W. E. Gore, both of Jackson, for appellee.

682

Argued orally by **Garner Green** and **W. E. Morse**, for appellant, and by **John G. Burkett** and **W. E. Gore**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On June 16, 1944, a large group of the policemen of the City of Jackson, accompanied by the heads of various labor unions in the city, appeared before the Chief of Police and notified him that the policemen or most of them, had engaged to join a labor union, an affiliate of the American Federation of Labor, and that they desired the use of the city court room for the purpose of electing the officers of the union and otherwise in the completion of their organization. On the next day the Chief of Police in writing informed the Mayor and Commissioners and requested directions from them. Later on that day, the Mayor and Commissioners delivered to the Chief of Police a written order by which he and all policemen were informed that no policeman in the city shall be a member of a labor union, the order setting out several grounds or reasons for the regulation, among which was that such a membership would result in a divided allegiance. The order directed the Chief of Police to immediately notify all the policemen thereof, and to notify them further that any policeman who did not resign his connection with any labor union by noon of June 19, 1944, would be dismissed. All were so notified and at the hour last mentioned 34 of the policemen, including appellee, declined to obey the order and were thereupon discharged.

Within ten days thereafter appellee and others of the dismissed policemen filed with the Civil Service Commission of the city, as provided by Section 10, Chapter 208, Laws 1944, a written demand for an investigation, and on July 11, 1944, the Civil Service Commission had a full hearing, all parties being present or represented. On July 19, 1944, the Civil Service Commission rendered its decision in writing affirming the dismissal stating fully and at length the reasons and grounds for its action. The Commission ordered, however, that the City Council should restore to the service any policeman who within five days applied for reinstatement coupled with a renouncement of his union affiliation. Appellee did not so apply but instead appealed to the Circuit Court, as also allowed under the cited Act.

The grounds upon which policemen in a city operating under the commission form of municipal government, as does the City of Jackson, may be removed or discharged are set out in Section 9 of the cited Act and they are as follows: Incompetency, inefficiency, or inattention to duty; dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public or a fellow employee or any other act of omission or commission tending to injure the public service. The grounds upon which the Civil Service Commission sustained the dismissal were (1) insubordination and (2) acts tending to injure the public service.

The cited Act expressly provides that on appeal to the Circuit Court from the order of the Civil Service Commission, the hearing in the Circuit Court "shall be confined to the determination of whether the judgment or order of removal, discharge, demotion or suspension made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds." The appeal is from the action of the Civil Service Commission since it makes "the City's final decision as to whether a policeman shall be discharged." McLeod v. Civil Service Commission,

198 Miss. 721, 21 So. (2d) 916, 917. The questions to be considered by the Circuit Court and the jury under its direction were, therefore, whether the action taken by the Civil Service Commission was in good faith, honestly done, and upon a cause which reasonable men, acting as such a commission, could reasonably say was an adequate cause.

A muncipal council in employing and in discharging policemen and other municipal employees and in prescribing rules and regulations for the conduct of such employees is acting in an executive or administrative capacity, San Antonio, etc., Local Union v. Bell (Tex. Civ. App.), 223 S. W. 506, at page 511, and the Civil Service Commission in its investigation under the cited Act as the agent of the city is moving still within the ambit of an executive or administrative function. The Legislature could not confer on a circuit court or any other judicial court the authority to appoint or to discharge city employees or to prescribe rules for the government of such employees, and as it could not do so directly it could not do so by the indirect device of an appeal, and as already pointed out the Legislature has been careful not to do so in the cited Act. When an executive or administrative officer or agent goes beyond the scope of the power vested in him by law it becomes a judicial question, of course, and such was the case of Glover, Mayor, v. City Council of Columbus et al., 132 Miss. 776, 96 So. 521, but there is no such case here.

It was not competent, therefore, on the appeal, for the Circuit Court and its jury to convert themselves into an administrative body and to become a civil service commission with authority as if original to determine whether to the minds of the court and jury there was cause for the dismissal in this case. The Constitution which divides the powers of government into three separate departments, neither to usurp the authority of the other, stands forth and forbids. The only inquiry upon which the court and jury could embark was that already stated, namely,

whether the action taken by the Civil Service Commission was in good faith, honestly done, and upon a cause which reasonable men, acting as such commission, could reasonably say was an adequate cause. To that extent only would or could the issue become a judicial question. Local governments are, and of necessity must be, of a higher authority than that which is merely advisory to the courts. Compare City of Jackson v. McPherson, 158 Miss. 152, 158, 130 So. 287, and Dixie Greyhound Lines v. Mississippi Public Service Comm., 190 Miss. 704, 200 So. 579, 1 So. (2d) 489.

This case does not involve in any way the merits or demerits of labor unions when confined to private employment. In their place, outside of governmental agencies, their merits are fully conceded. It was as to their place when city policemen are involved that the Civil Service Commission was here concerned and it is that only with the court is concerned. And here it is to be remembered, and well noted, that a civil service commission, in its administration, is not solely a fact finding body; it is charged, as the supervising agent of the city, and within the province committed to it, with the essential discretion which must be invested in such a body in the matter of what is good policy in city employments, and in the conduct of city employees according to the character of the duties to be performed by the particular employees under consideration.

It ought to be conceded by everybody that while a city policeman must perform his duties with courage and intelligence, he must do so without favoritism. Nothing could be more unbecoming to a police department than that it shall be pledged, or otherwise committed in an obligatory manner, to a preference of one group over another when all are paying their salaries, and particularly is this true when the groups are such that disputes between them are liable to arise, which in turn may lead to disorders. And inasmuch as the City Council is elected by the people and made responsible to the people for the

proper conduct of every department of the city government, the police employees must be responsible to the council and must be under its direction, free from the obligation of any other allegiance whatsoever, so far as their activities as policemen are concerned. And to fully implement this requirement it is expressly enacted by Section 3803, Code 1942, that the City Council under the commission form of municipal government "shall also have power . . . to make all needful rules and regulations for the government of the officers and employees of said city; to enforce a strict observance thereof, and to change the same when deemed necessary."

In Fraternal Order of Police v. Lansing Board of Commissioners, 306 Mich. 68, 10 N. W. (2d) 310, 312, the latest case on the subject, it is said: "Police and fire departments are in a class apart. Both are at times charged with the preservation of the public order, and for manifold reasons they owe to the public their undivided allegiance. The power in the city of complete control is imperatively necessary if discipline is to be maintained," quoting from Carter v. Thompson, 164 Va. 312, 180 S. E. 410. In Hutchinson v. Magee, 278 Pa. 119, 122 A. 234, the court said: "It is generally conceded that association with any organization which, on any occasion or for any purpose, attempts to control the relations of members of either police or fire departments toward the municipality they undertake to serve is, in the very nature of things, inconsistent with the discipline which such employment imperatively requires, and therefore must prove subversive of the public service and detrimental to the general welfare. . . . If plaintiffs desired to retain their positions in the public service, they should have obeyed the director's order; having elected not to do so (which, of course, was the privilege of each of them, as individuals), they cannot successfully complain of the ensuing results." See also McNatt et al. v. Lawther (Tex. Civ. App.), 223 S. W. 503; San Antonio, etc., Local Union v. Bell (Tex. Civ. App.), 223 S. W. 506; Brownell v. Russell,

76 Vt. 326, 57 A. 103; and McAuliffe v. City of New Bedford, 155 Mass. 216, 29 N. E. 517. No case to the contrary of these holdings, when carefully examined, has been cited by appellee.

The good faith of the Civil Service Commission has not been challenged. Appellee has made no offer or insistence that he could show to the contrary. He has insisted that the good faith of the Commission is not an issue in the case. And concurring as we do in the above quoted excerpts taken from the courts on the applicable law, nothing further is necessary than now to quote the pledge which each member of the proposed union must take as a feature of his membership: "I . . . pledge my honor to observe faithfully the constitution and laws of this local of the American Federation of State, County and Municipal Employees and the rules and regulations for the government thereof; not to make public any of the private proceedings of this local; to perform faithfully all the duties assigned to me; to support the products and services of organized labor by making purchases of such products and services; to so conduct myself at all times as not to bring reproach upon my local; and at all times to bear true and faithful allegiance to the American Federation of State, County, and Municipal Employees and to the labor movement in general."

When the terms of this pledge and the other facts mentioned herein, all of which are undisputed, are laid alongside the legal principles above set forth it is manifest, as we now think, that the Civil Service Commission had before it a cause upon which reasonable men, acting as commissioners, could reasonably arrive at the conclusion which they did, and this being the case no court or jury should be permitted, or can be permitted, within constitutional limitations, to otherwise adjudge. Had such a pledge, but to the opposite effect, been made to some group, by whatever name called, favoring non-unionism and that the police would in their activities endeavor at all times to advance the cause of non-unionism it would

have been equally objectionable had the Civil Service Commission so held, as doubtless it would.

The judgment should have been for the appellant City and whether upon the request for a peremptory charge or upon the motion for judgment notwithstanding the verdict is immaterial so far as the present case is concerned.

Reversed and judgment here for appellant.

CONCURRING OPINION.

Sydney Smith, C. J., delivered a concurring opinion.

I am of the opinion that the Court below should have granted the appellant's request for a directed verdict. I regret that I am unable to concur in the reasons therefor that influenced Judges L. A. Smith, Alexander and Griffith, as set forth in Judge .Griffith's opinion, thereby preventing the decision here made from being an authoritative precedent in cases arising under Chapter 208, Laws of 1944.

The question presented to the Court below was not "whether the action. taken by the Civil Service Commission was in good faith, honestly done and for cause which reasonable men acting as such a commission, could reasonably say was adequate cause" for the discharge of the appellee as my above named associates hold. Neither was it whether the appellant's Mayor and Commissioners discharged the appellee in good faith for cause, as contended by counsel for the appellee, but in the plain language of Section 10 of the statute, which was held constitutionally valid on the former appeal herein (McLeod v. Civil Service Commission, 198 Miss. 721, 21 So. (2d) 916), was "whether the judgment or order of removal, (or) discharge . . . made by the commission, was or was not made in good faith for cause." The word "commission" as its context clearly discloses here refers to the City's Civil Service Commission. The appellee recog-

nized this as the proper construction of the statute when framing his notice to the Commission of his appeal to the Court below. Section 10 of the statutes requires this notice to state the grounds of the appeal. The notice is addressed to the Civil Service Commission and recites that ''Comes now J. R. McLeod, respondent in the above styled and numbered investigation matter, and files with John P. Ricks, Sr., President of the Civil Service Commission of the City of Jackson, Mississippi, this written notice of appeal from the order, judgment, findings and rulings of said Commission at the public hearing of said investigation on July 11th and 12th, 1944; final adjudicating order and judgment entered on July 19th, 1944 . . . and respectfully shows as follows: That the judgment or order of said Commission by the authority of which the respondent was removed and discharged from the position as a member of the police department of the City of Jackson, Mississippi, was not made in good faith for cause'' and then proceeds at great length to state why this allegation is correct.

The causes for which the statute permits a policeman to be discharged are set forth in Section 9 thereof and the one with which the appellee is here charged is the commission of an act tending to injure the public service.

Two questions then were presented to the Court below, (1) was the judgment or order of the Civil Service Commission made in good faith, and (2) for cause. The order or judgment of this Civil Service Commission is presumed, prima facie, to have been made in good faith for cause, which presumption continued until the contrary appears from evidence introduced on the trial in the Circuit Court. In this case, however, the appellee not only introduced no evidence in support of his charge that the Commission's order was not made in good faith but obtained the exclusion of evidence offered thereon by the appellant, consequently there being no evidence to the contrary the presumption that this order of the Commission was made in good faith remained in full force and

effect and there was, therefore, no occasion to submit that branch of the question to the determination of the jury.

The theory on which the appellee seems to have proceeded and in which the trial judge concurred, is that our opinion on the former appeal, holding that the appellee was entitled to a jury trial, not on a transcript of the evidence heard by the Civil Service Commission but "de novo," necessarily means that the Court below should try the issue that was before the Civil Service Commission, i.e., whether the Mayor and Commissioners acted in good faith for cause in initiating the discharge of the appellee. What this Court there intended to hold, and in the light of the statute's specification of the issue to be tried in the Circuit Court, seems clearly to have held, is that the issue designated by the statute—whether the judgment of the Civil Service Commission was made in good faith for cause—should not be tried or a transcript of the evidence heard by the Commission, but anew, i.e., on evidence then introduced before the jury. To have held what the appellee seems to think the Court did, would have been to amend the statute under the guise of interpreting it.

But the result here would have been the same had the appellee not misconceived the issue to be tried, for it seems clear from the colloquies appearing in the record between counsel and the trial judge during the progress of the trial that the appellee would have made no attack, by evidence, on the good faith of the Civil Service Commission, and it is also clear from the record that he introduced all the evidence at his command on the second branch of the issue being tried, that is, whether the act with which he is charged constituted cause for is removal from the appellant's police force.

Before leaving this branch of the case I think it well to call attention, as was done in the opinion rendered on our former appeal herein, to the fact that this Civil Service Commission is not an inferior appellate court, but is

an administrative agency of the appellant charged with the duty of enforcing the civil service provisions of Chapter 208, Laws of 1944, under which when the Mayor and Commissioners discharge a policeman he need not accept his discharge but may transfer his controversy with the City from its Mayor and Commissioners to the City's Civil Service Commission, which is then charged with the duty of deciding whether or not he shall be discharged or retained in the City's service.

This brings me to the second branch of the question submitted to the Court below, that is, was the order of the Civil Service Commission by which the appellee was removed from membership on the appellant's police force made for cause. The reason given for the discharge of the appellee is that he had committed, or rather intended to commit, an act tending to injure the public service, i. e., had joined or intended to join the American Federation of State, County and Municipal Employees, a nationwide labor union affiliated with the American Federation of Labor. The appellee having admitted his intention to join this labor union if permitted to remain a member of the appellant's police force left for decision by the Court below only the question of whether membership in this labor union would tend to injure the public service. The question thus presented is one of fact, to be decided as all other questions of fact are in cases tried by a judge with the assistance of a jury; the judge's duty being to instruct the jury on the principles of law that should govern its decision and when on the evidence only one verdict could rightly be returned, to peremptorily instruct the jury to return it. When such an instruction is granted it is not necessary for the jury to actually return the verdict but the court should simply render a judgment for the party to whom the instruction was granted, as on a verdict returned in accordance with the instruction. Hairston v. Montgomery, 102 Miss. 364, 59 So. 793; Yazoo & M. V. R. Co. v. Pope, 104 Miss. 339, 61 So. 450; Home Owners

Loan Corp. v. Wiggins, 188 Miss. 750, 195 So. 339, 196 So. 240.

The charter of the labor union which. the appellee intended to join requires its members to "work for the establishment and maintenance of fair wages, hours, working conditions, and civil service classification" and each must sign the following pledge: "I pledge my honor to observe faithfully the constitution and laws of this local of the American Federation of State, County and Municipal Employees and the rules and regulations for the government thereof; not to make public any of the private proceedings of this local; to perform faithfully all the duties assigned to me; to support the products and services of organized labor by making purchases of such products and services; to so conduct myself at all times as not to bring reproach upon my local; and at all times to bear true and faithful allegiance to the American Federation of State, County, and Municipal Employees and to the labor movement in general."

It will thus be seen that police officers whose duty to the public requires them to keep the peace, acting always in so doing in the interest of the public, who are members of this labor union owe an allegiance thereto which requires them at all times to support and promote the union's objectives and the labor movement in general. Strikes of great magnitude, both primary and sympathetic, often marked by actual or threatened violence, by the members of labor unions to enforce compliance by employers with the union's demands, are so common and so frequently require the impartial intervention of the police to preserve the peace, that a jury could not rightfully find that membership of a city's police force in a labor union of this character would not tend to injure the public service. The public interest requires the undivided loyalty of police officers to the public service and we were told long ago by One whose judgment was infallible that "no man can serve two masters; for either he will hate the one and love the other, or else he will hold to the one and despise the

other''. This being true, no question remained for submission to the jury and the Court below should have granted the appellant's request for a directed verdict.

I have limited this opinion to matters that apply only to the effect on the public service of membership of the city's police force in a labor union, and have purposely left out of view other matters that might affect this question adversely to the appellee but would apply not only to policemen but to all other city employees.

One of the contentions here made, not hereinbefore discussed, is that on the first trial of this cause the court below held that the appellee's declared purpose to join and continue as a member of this labor union was sufficient cause for his removal from the appellant's police force, and that this Court disapproved that holding on the former appeal herein by reversing the judgment then rendered. That question was not properly presented, if at all, to the court below on that trial and under the rulings then made by the trial judge could not have been then decided. The only evidence bearing on this question, introduced on that trial, was contained in the transcript in the evidence heard by this Civil Service Commission, and when that transcript was stricken from the evidence and no evidence was introduced by McLeod, the then appellant, in support of his claim that his removal was not in good faith for cause, there was nothing the court below could have done except render a judgment for the city. What the trial judge there thought of the appellee's claim to have been unlawfully removed from the city's police force does not appear from the record then made, to which alone we can look for it.

Again it is said that if this Court is of the opinion that the jury on the evidence introduced on the second trial of this case should have been directed to return a verdict. for the city it should have affirmed the judgment rendered by the court below on the first trial, for the appellee then admitted, in the brief of his counsel, that he intended to join and continue as a member of this labor union. This

contention overlooks the fact that this court is one of appellate jurisdiction only and is authorized to decide questions when, but not unless, they have been presented to and decided by a trial court, and as hereinbefore stated, this question was not presented to the trial court on the first trial hereof in such form as would authorize that Court to decide it, nor does the record disclose that it was in fact decided.

### DISSENTING OPINION.

**McGehee, J.,** delivered a dissenting opinion.

Under my view of the record now before us, the verdict of the jury and judgment of the trial court should be affirmed, if we are to adhere to our former decision herein on the principal question involved—whether or not the declared purpose of these policemen to join the American Federation of State, County and Municipal Employees, an affiliate of the American Federation of Labor, and their failure to renounce such intention when requested so to do, was per se a sufficient cause in contemplation of law for their discharge from the police force.

On the first trial the Circuit Judge decided this question in the affirmative, without the intervention of a jury, and manifestly his only reason for denying the policemen a trial by jury was the fact that they had admitted in their answer a present intention to join such organization and had also admitted that they declined to renounce their declared purpose in that behalf.

On the first appeal of the case we reversed this decision of the trial judge, and we thereby declined to hold that this admitted act of the policemen was per se a sufficient cause for their discharge—an issue then clearly presented and twice elaborately briefed. The former reversal was of necessity based upon the theory that the fact of whether or not these men were discharged in good faith and *for cause* was a jury question; that is to say, an issue

·of fact to be determined under all of the evidence on a trial de novo in the Circuit Court where the jury should discharged "the same functions that it always does in trials therein."

The language just above quoted was used in our former decision of this same case when it was entitled McLeod v. Civil Service Commission of Jackson, as reported in 198 Miss. 721, 21 So. (2d) 916, but which case is now The City of Jackson v. J. R. McLeod, due to the fact that we also said on the former appeal that the "parties to such controversy from its inception to its final decision by the City's Civil Service Commission are the policemen and the City in its corporate capacity." And, as a matter of fact, the final judgment was rendered by the Mayor and Commissioners of the City of Jackson, since the Civil Service Commission rendered what may be termed a judgment nisi, giving the policemen five days within which to renounce their intention to join the organization in question and at the expiration of said period the Mayor and Commissioners entered a judgment reciting noncompliance by the policemen of the condition imposed, and finally discharged them setting out their names in the final judgment. And on the former appeal we did not intimate in remanding the case for trial de novo before a jury in the Circuit Court that the trial was not to involve the same issues that the Civil Service Commission had heard and determined, to-wit, whether these men had been discharged in good faith and *for cause*, or for political reasons, by the Mayor and Commissioners. This Court had already held in the case of Whittle v. City of Hattiesburg, 132 Miss. 808, 96 So. 741, that: "To try a cause anew means to try it as if it never had been tried before."

When we now hold that the City was entitled to a directed verdict in its favor on the ground that the admitted act of the policemen was per se a cause for their discharge in contemplation of law as one "tending to injure the public service," and that their admitted refusal to renounce their purpose to join the organization com-

plained of was per se an act of ''insubordination'' within the meaning of Chapter 208, Laws of 1944, which declares that members of the police and fire departments are ''automatically . . . and . . . permanently'' inducted under civil service if they have been employed as long as six months, the inevitable result will be that the policemen are to be taxed with the unnecessary cost of the second trial in the Circuit Court and also the cost on this further appeal, all to no purpose.

Prior to the enactment of Chapter 208, Laws of 1944, supra, the governing authorities of municipalities in this State could exercise, as a proper function of local government, an uncontrolled discretion in the matter of discharging city employees for any reason satisfactory to the appointing power or for no reason at all; but by this Act the Legislature withdrew this unrestricted power from municipalities of a specified class as to experienced members of the fire and police departments, and restricted the right of discharge to cases of ''incompetency, inefficiency, or in attention to duty; dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public, or a fellow employee, or any other act of omission, or commission tending to injure the public service''—the concluding general provision above quoted meaning any other act of a like kind and character of those instances of misconduct specifically mentioned in the enumerated offenses, if I understand the doctrine of ejusdem generis correctly. And, most assuredly, the Legislature would never have intentionally made mere membership in the organization here in question, as distinguished from an abuse of the privileges of such membership which is not yet complained of, a cause for their discharge from employment.

On the first appeal of this case we upheld the constitutional right of the Legislature to impose the above mentioned limitations, when we held this Civil Service Act to be constitutional.

Under the provisions of this Act, if such an employee is discharged by the Mayor and City Commissioners, allegedly for any of these enumerated instances of misconduct, he has the right to have an investigation made by the Civil Service Commission of the city, and ''after such investigation the commission may, if in its estimation the evidence is conclusive (not that the discharged employee was about to join an organization of police officers, but that doing so ''tended to injure the public service'') affirm the removal, or if it shall find that the removal, . . . was made for political or religious reasons, or was not made in good faith for cause'' the Commission may order the discharged employee reinstated, etc.

Whether the jury was to review the act of the Civil Service Commission or that of the Mayor and Commissioners the fact remains that the question for decision in either instance would involve the requirement that it should appear from the evidence that the judgment under review was rendered for a cause authorized by law, even if the good faith of both Commissions is conceded.

Moreover, when on the first appeal we upheld the action of the Circuit Judge in sustaining a motion of the city to exclude from the record the transcript of the evidence taken before the Civil Service Commission we foreclosed any inquiry by a jury into whether or not such Commission had evidence before it to justify its conclusion when it held that these policemen were discharged by the Mayor and Commissioners in good faith for cause, and not for political reasons. Nor was there left any conceivable way whereby the jury could determine whether the Civil Service Commission itself had acted in good faith, and for a cause concerning which reasonable men might agree with the City Commission, since no tribunal can properly review the action of another without the benefit of that upon which the former acted.

At any rate the issue which the Court is now saying should have been determined on the second trial has not been developed before, nor submitted to, a jury for de-

cision, to-wit, whether or not the Civil Service Commission acted in good faith and for cause, and, in the language of the statute hereinvolved, on evidence which "in its estimation . . . is conclusive." In other words, it occurs to me that when we hold that the city was entitled to a directed verdict on the second trial, the effect of the decision is to deprive the policemen of the benefits of the retirement fund to which they have contributed, their seniority rights and their jobs without due process of law.

But it is said that the policemen can not complain thereof because they obtained on the second trial the exclusion of the evidence as to whether the Civil Service Commission had rendered its decision in good faith and for cause. But even so, the only way that a jury could determine whether the judgment had been rendered for cause, conceding the good faith of the Civil Service Commission, was by knowing what showing, if any, to the contrary had been made by the policemen at such hearing on the question of whether they had done anything tending to injure the public service and to constitute a present cause for discharge, and this Court had held that the evidence before said Commission in that behalf had been properly stricken, and the trial judge in an effort to conform to our former decision, affirming his own in that behalf on the first trial, had stated on the second trial that "the issue to be tried is whether or not the City Commission, that is, the Mayor and two Commissioners, acted in good faith, and what the Civil Service Commission did or did not do, has no place in the trial of this case whatever"; wherefore what else could the policemen or their counsel do except to try to have the trial conducted according to the ruling of the trial judge on the first trial which we had upheld on the former appeal as to the incompetency of such evidence?"

It is inconceivable to me either as to how the case could be tried de novo before a jury without the jury hearing all of the evidence germane to the issues upon which the

Mayor and Commissioners determined that these men should be discharged, or as to how the jury could review the finding of the Civil Service Commission (if there is such a thing as a jury acting in the unique capacity of an appellate tribunal) without the benefit of the testimony heard before the latter Commission on the question of whether the Mayor and Commissioners had acted in good faith and for cause, or for political reasons, and as to how the jury could review the action of the Civil Service Commission on a hearing de novo without considering all of the evidence pertaining to the issues heard by said Commission.

In any event that which is now before this Court for review is the record made in the Circuit Court on the second trial pursuant to our former decision in this cause, that is to say, we do not have before us a case wherein we are to review the action of an administrative body, on the evidence heard and the record made before it, for the purpose of determining whether its judgment is supported by substantial evidence. We have no evidence to look to in that behalf. Here the Legislature has provided for an intermediate trier of the facts in the Circuit Court, and it seems to me that the question for our decision is whether the *jurors*, whose finding is before us for review, could have found as reasonable men that the declared purpose of these policemen to join an organizaiton of the type and character in question was not an act "tending to injure the public service"—purely an issue of fact under the proof in the case.

On the weight of the evidence it clearly appears that the jury was entitled to find as a reasonable conclusion that there is a fundamental difference between the American Federation of State, County and Municipal Employees and the labor unions in general, in that the proof shows that its charter denies the right of policemen to strike; that the organization does not advocate the negotiation of contracts with municipalities through collective bargaining, or under the closed shop principle or check-

off system; that no strike has even been called by one of the locals or by the national organization in a police department; that the National has never exercised any control over the locals, except to the extent of seeing to it that the no-strike provision of the charter is observed, under penalty of its forefeiture, and to require that the local's constitution and by-laws are consistent with the policies of the parent organization; that the American Federation of Labor exercises no element of control whatever over either this national organization or the local units thereof; that when the charter was mailed to the proposed union of the Jackson policemen it was accompanied by a letter from the President of the National in which it was stated: ''I want to make plain also that if your local should engage in a strike your charter will be revoked automatically, for we cannot condone a strike by police officers''; and that the employees here involved would faithfully discharge their duties in the future as policemen, notwithstanding their membership in this so-called labor union.

As against the proof above set forth, the City relies upon the inferences to be drawn from 'the ''divided allegiance'' that membership in such an organization might entail, and also on the pledge quoted in the controlling opinion herein—a pledge which the record before us fails to disclose was ever seen by the Mayor and Commissioners prior to their original order discharging these men, and which pledge contains the further recital that ''I solemnly promise that I shall do all in my power to exault and promote the government service; . . . ''

And it is said that the late Samuel Gompers, when emphasizing the vital distinction between one of these organizations of public employees and labor unions in general, made this statement: ''When policemen accept charters from the A. F. of L. it is with the distinct understanding that strike action will not be resorted to and no obligation is assumed which in any way conflicts with their oaths or duty.''

Of course this traditional view that a strike in a police department should not be tolerated, and that better wages, hours and working conditions should not be obtained for policemen through coercion and intimidation on the part of either local or outside influences, should be readily acceptable to all. The non-delegable duty and responsibility imposed by law upon the governing authorities to provide at public expense for the safety and security of the lives and property of the citizens and the power to fix such compensation for this protection, and the working conditions therefor on such basis as in their judgment seems proper, should never become the subject of barter or sale. But this does not mean, however, that the right to organize, assemble and petition for the redress of grievances, whether real or imaginary, or to make recommendations for the consideration of those in authority, either as to wages, hours and better working conditions or in the interest of more efficient law enforcement, can be abridged or curtailed so long as there has not been an abuse of these constitutional guaranties.

It was held by the Supreme Court of the United States in the case of De Jonge v. Oregon, 299 U. S. 353, 57 S. Ct. 255, 81 L. Ed. 278, that the people may be protected from an abuse of the right of assembly and petition, etc., but that intervention with such constitutional guaranties can find justification only in dealing with the abuse; that the right itself cannot be curtailed.

Members of a police force are not employed at random as men are hired in many private enterprises; they are presumed to be carefully selected from a personal knowledge on the part of the appointing power as to their fitness and qualifications as law abiding citizens, and it should also be presumed that they will faithfully discharge their official duties, as they testified in the case at bar they would do, without fear or favor, until the contrary shall appear, even though they may be in sympathy with the labor movement in general.

The element of outside control and the alleged abuse of union powers and privileges which was present in some of the cases cited in the majority opinion herein, and which formed the basis of the divided allegiance that gave those courts concern, is disclaimed in regard to the "union" here involved. And in those cases the municipal charter made the City Commission the final arbiter of the sufficiency of a cause for discharge. Under those decisions the members of the fire departments could likewise be discharged on account of union membership, whereas in the instant case the proof shows that the fire department of the City of Jackson has been unionized for nearly twenty-five years without any apparent injury to the public service.

Insofar as the prospect is concerned that the policemen here involved may assemble and petition for better wages, hours and other working conditions unless they should renounce their membership in the proposed union, it would appear that a sufficient answer would be that they would have such a right under the First Amendment to the Constitution of the United States and Section 11 of the State Constitution whether they belong to a union or not. And this right was recognized by the City Commissioners in their letter to the Chief of Police asking him to discharge these men, wherein it was said: "Should the police officers, who are not members of this or any other union, wish to discuss hours, wages or other working conditions with us, we will be glad to meet with them for that purpose." In fact, such a privilege has always held an honorable place among the natural rights of man.

Conceding for the purpose of this decision the good faith of both the Mayor and Commissioners and the Civil Service Commission of Jackson, it is apparent that when the former discharged these policemen it was not advised of, or at least failed to take into account, the essential and radically different features of the particular organization in question as compared with the rights and privileges of labor unions in general; nor does it appear that

the jury would have been warranted in finding from the evidence that either of said Commissions had acted for *cause* in discharging them for an act of misconduct within the meaning of Chapter 208, Laws of 1944, regardless of the good faith that may have prompted such action, since it is not within the contemplation of this statute that such employees under Civil Service can be discharged for what they may do in the future by virtue of present membership in such an organization.

PARTIALLY DISSENTING OPINION.

**Roberds, J.**, delivered a partially dissenting opinion.

I concur in the reversal of this case, but think it should be remanded for opportunity to try the issues as defined in the majority opinion.