Joseph P. Coane, Appellee, v. Joseph P. Geary et al., Appellants.

Gen. No. 40,134.

Opinion filed January 11, 1939.

BARNET HODES, Corporation Counsel, for appellants; FRED V. MAGUIRE, CARL HJALMAR LUNDQUIST and ALEXANDER J. RESA, Assistant Corporation Counsel, of counsel.

DAVID J. BENTALL and HART E. BAKER, both of Chicago, for appellee.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

On June 10, 1937, Joseph P. Coane filed a petition in the circuit court of Cook county in which he charged that the members of the Civil Service Commission of the city of Chicago, defendants, had, on February 3, 1937, unlawfully discharged him from his position as a police officer of that city, after a hearing before such commission. He prayed that writ of certiorari issue out of the circuit court, directed to such Civil Service Commission, requiring it to return to the court a true and correct transcript of the record of the proceeding, together with the evidence taken on the hearing of a complaint filed with the commission. The defendants thereupon moved the court to strike the petition and dismiss the suit, which petition was denied. Thereafter on September 29, 1937, the court ordered the writ to issue and further ordered that the commission return the record of the defendants in the matter of the charges, hearing and discharge of the plaintiff from his position as patrolman of the city of Chicago, including a transcript of the testimony of witnesses produced at the hearing. On October 16, 1937, a return was made to the writ by the defendants, in which they certified that it contained a true and complete statement of the facts pertaining to the trial and discharge of Coane. Subsequently, the transcript of the testimony was filed in the cause. The return recites that on January 19, 1937, charges were preferred against Coane by the

commissioner of police of the city of Chicago, together with certain specifications concerning the preferred charges which had been filed with the Civil Service Commission, and that on January 27, 1937, Coane had been commanded to appear before the commission and defend himself against such charges; that a copy of the written charges filed against Coane were served upon him on January 21, 1937, and that a receipt for such charges had been made by Coane; that a hearing was had before such commission on the charges made against Coane, at which hearing he was present; that witnesses were produced at such hearing who testified as to the charges made; that the testimony of such witnesses, together with the finding of the commission, were entered of record, and that the commission had found that the charges were sustained, and that Coane was ordered removed from his position in the police department of the city of Chicago. As shown by the return, the charges against Coane were, in substance, that as a member of the police department he had violated a rule which required that he devote his whole time and attention to his duties as a police officer; that he had violated a rule prohibiting him from following any other calling or occupation, or being engaged in any other business, that he had been guilty of conduct unbecoming an officer of the police department, of inattention to duty, and of making a false official report. The return made by defendants, the Civil Service Commission of the city of Chicago, also contains a transcript of the complete record in the case of the plaintiff, including the evidence taken. The record also contains a finding to the effect that on July 6, 1936, while plaintiff was a member of the police department of the city of Chicago, and while on duty as a police officer assigned to the Navy Pier in the city of Chicago, plaintiff approached an automobile parked in the neighborhood of the Navy Pier, the automobile being

occupied at the time by the owner and his wife, and called the attention of the owner to the fact that he had violated the motor vehicle law by not displaying a license plate on the rear of his car; that the owner of the car explained to the police officer that he had just purchased the car without the license plate, and that he intended immediately to purchase the proper plates and place them on his car; that thereafter the plaintiff placed one foot on the running board of the car and prevented the occupants from leaving the place, that he detained them for more than an hour and delivered a lecture on matters of political controversy, and among other things, complained that he had been restrained by his superior officers from delivering speeches upon political and social questions; that he persuaded the occupants of the car to purchase from him a book entitled, "A Labor Party for the United States," and that he thereupon presented these people with a "sticker" containing the following words: "Compliments of a Chicago Policeman, who refuses to club or shoot strikers or the unemployed." Upon this and other undisputed testimony hereinafter referred to, the commission found that the plaintiff's conduct amounted to a reflection on the police department of the city of Chicago and the members thereof, and that the whole conduct of plaintiff in connection with the matter, constituted inattention to duty and an imposition upon the owner of the car, and that his conduct was unbecoming a police officer of the Chicago police department.

The record further shows that the commission found from the evidence before it, that on July 22, 1922, and prior to plaintiff's appointment as a police officer, on the complaint of a young boy, plaintiff had been found guilty of gross immoral conduct, and that upon complaint being made in the municipal court of Chicago, he had been arrested on a warrant charging him with

such offense; that on the trial of the cause, plaintiff had entered his appearance and waived a jury, and that after a trial, a fine of $50 and costs had been imposed upon him for such offense. The record does not show that on the hearing before the Civil Service Commission plaintiff denied any of the charges made against him.

After a hearing upon the return of the Civil Service Commission to the writ of certiorari, the court entered an order overruling the motion of the defendants, respondents, to quash the writ, and on the motion of plaintiff, petitioner, entered an order to quash the record of the proceedings before the Civil Service Commission.

In *City of Chicago v. Bullis,* 124 Ill. App. 7, where a police officer was charged with conduct unbecoming an officer, this court said:

"The charges are two: one, conduct unbecoming an officer, the other, violation of rule 54. The finding of the trial board, which the return shows was approved by the Civil Service Commission, is as follows: 'Upon investigation of within charges, we find said Walter Bullis guilty as charged, and decide that he be dismissed from the police department and the service of the city of Chicago by the general superintendent of police.'

"It is true this finding includes, in its language, both charges; but even though there is no rule 54 to which it can apply, it is sufficient if it applies to the charge of conduct unbecoming an officer. No rule of the commission was necessary in order to try petitioner on the charge of conduct unbecoming an officer. *Joyce v. City of Chicago,* 216 Ill. 466, 473. In that case the charges were the making of a false official report, *and* conduct unbecoming an officer, in respect to which the court say: 'The charge filed in this case, if true, shows conduct of the plaintiff in error "unbecoming a police

officer," and which clearly rendered him unfit to act as a lieutenant of police in the city of Chicago, and was cause for, and justified his removal from such office by the commission.' In the present case, if the appellee extorted money, as specified, he was clearly guilty of 'conduct unbecoming a police officer.' Counsel for appellee say the specifications show that the offense charged was committed in November, 1901, twenty-three months before the charges were preferred, and contend that a delay exceeding eighteen months is unreasonable in a case like the present. It does not appear when the knowledge of appellee's offense came to the superintendent of police, and we cannot sustain the contention that appellant was guilty of laches."

In *Joyce v. City of Chicago*, 216 Ill. 466, a similar charge was filed against a lieutenant of police, and the Supreme Court said:

"It is further contended that the offense with which the plaintiff in error was charged pertained to misconduct on his part while acting as a notary public and not to misconduct on his part while acting as a lieutenant of police, and that although he may be guilty of the charge it formed no proper basis for his discharge from office as a lieutenant of police by the commission. The charge is that the plaintiff in error, in connection with patrolman Tracy and sergeant Cramer, two other police officers upon the police force in the city of Chicago, rendered a false and fraudulent 'Messenger's expense account' to the Secretary of State for the return of Joseph Larkin, a fugitive from justice, from Cleveland, Ohio, to the city of Chicago, whereby they obtained from the State $48.80 in excess of the amount allowed by law for such service. Said section 12 of the City Civil Service act provides that an officer in the classified civil service shall not be removed except for cause. The commission held the obtaining of said fund unlawfully from the State was cause for the re-

moval of the plaintiff in error as a lieutenant of police. We are of the opinion that they were right in so holding, and do not agree with the contention that no cause is sufficient for the removal of an officer in the classified civil service unless the offense is committed while the officer is acting strictly within the line of his duty as an officer. It would hardly be urged that a construction of the statute would be justified which would require the commission to retain a murderer or burglar in the classified civil service simply because he was off duty at the time the murder or burglary was committed and was not acting in the line of his duty at the time he committed one or both of said crimes.''

Defendants insist that the court had no right to review the discretion of the commission because of their charges against plaintiff, and that the only office of the writ of certiorari is to certify the record of the proceedings of the commission to the court of review, and that the court upon an inspection of the record alone, determines whether such record establishes a jurisdictional fact pertaining to the person, the subject matter and the grounds for discharge, and a proper legal procedure for the removal of the person charged with the offense; that the court's judgment will be either that the writ be quashed, or that the record be quashed. While as a general proposition, this is a correct statement of the law, we have seen fit to go into the whole record, including the evidence, and from the entire record here we are of the opinion that the court was in error in quashing the record of the commission. In an opinion of the late Judge Murray F. Tuley, judge of the circuit court of this county, rendered in the case of *O'Regan v. City of Chicago,* on November 29, 1904 (Chicago Legal News, Vol. 37, p. 150, Dec. 24, 1904), wherein that learned and revered judge clearly and succinctly set forth the duties of police officers, and the right of the head of the police department to discipline

the members of the police force, it is stated that: ''A police force is peculiar, *sui generis,* you may say, in its formation and in its relation to the city government. It is practically an organized force resembling in many respects a military force, organized under the laws of the United States and equally as important as to the functions it is required to perform.

''It is not an ordinary branch of the executive government like the mayor's office even, your water department, the comptroller's department, the health department, even; but, as I say, it is peculiar to itself, and to look at it in the same light that other branches of the executive department are regarded would be a mistake in a judicial decision. It is a department which requires that the members of it shall surrender their individual opinion and power to act, and submit to that of a controlling head just as much as the common soldier must surrender his own opinion and power of action to that of his commanding officer. And there is the same necessity of discipline—of regulation existing in the police department that exists in regard to the military department. Strict discipline must be enforced, and it must be enforced in a manner that is effective, and without the supervision or regulation of any other department of the state, and particularly, without any attempt on the part of the judicial department (which is a branch of the government entirely distinct and separate from the executive department), to regulate it in any way, and particularly, to regulate its discipline.

''This man goes into office as a patrolman. At the time he goes into office there is found (according to the evidence) in existence a set of rules and regulations promulgated by that department, existing for years before he became a member, which prescribes the manner in which he shall act, and his superior shall act towards him, to a very large extent. It lays down the

discipline to which he is to become subject by reason of his enlistment, or rather his taking his oath of office as a policeman. It enters into his contract by which he becomes a patrolman, that he will obey the rules and regulations of his superior officer; that he will conform to the discipline prescribed; it is a part of his contract; and one part of these rules and regulations is that for certain offenses, drunkenness, absence from duty, etc., specified particularly, he shall be liable to a fine or loss of pay, for a term not exceeding ten days. That is a part of his contract. He does not stand like a state officer, who is an officer appointed for a specified term with a salary and a successor in office; he does not come within the definition as the authorities state it of a state officer; he comes within the definition of a municipal officer—one holding office, either temporarily or during good behavior, or for a specified term; and in the case at bar, under an implied contract that he will submit to certain rules and regulations in regard to that employment.''

The conduct of this officer, and the briefs filed here by his counsel in support of his right to speak and act as he pleases, clearly indicate that he possesses a seditious state of mind, that he is in open defiance of his superior officers, and that he should not be retained as a police officer.

The judgment of the circuit court of Cook county is, therefore, reversed and the cause is remanded with the direction that the court enter an order quashing the writ of certiorari issued in the cause.

*Reversed and remanded with directions.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.