8 So.2d 175

**LISENBA et al. v. GRIFFIN et al.**

**7 Div. 665.**

Supreme Court of Alabama.

May 14, 1942.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellees.

Rains & Rains, of Gadsden, for appellants.

BROWN, Justice.

This appeal is from a final decree of the circuit court of Etowah County, sitting in equity, declaring void an ordinance of the City of Gadsden creating "A City Barber Board" consisting of three members "all of whom must have followed the occupation of barbering in the City of Gadsden Etowah County, Alabama, for at least three (3) years, immediately prior to their appointment." The appointments to be made "from a list of names submitted to said Commission from the Journeymen and Boss Barbers' organizations." The ordinance prescribing and defining the power and jurisdiction of the board. The ordinance was adopted, according to its recitals "pursuant to the application of not less than 70 per cent of the barbers operating in the City of Gadsden."

The bill is filed by appellees, under the Declaratory Judgment Act, Code 1940, Tit. 7, § 156 et seq., against the City of Gadsden, the City Barber Board, and the three individuals constituting the same, and alleges that complainants each own and operate a barber shop in the City of Gadsden; that said ordinance conflicts with the general laws of the State, and that the City Commission of the City of Gadsden was without authority to enact said ordinance, and is in conflict with the Bill of Rights and seeks to deprive complainants of their liberty to work in the prosecution of a private business, to regulate their hours of work and fix the price of their services to their customers.

Said ordinance provides, inter alia:

"The facts, policies and purposes herein set out and the provisions and regulations hereof are declared to be enacted in the interest of the public health, public safety and general welfare. The occupation of barbering and the operation of barber shops in the City of Gadsden is hereby declared to be affected with the public interest, and to facilitate supervision of such shops as now prescribed by law and the rules and regulations promulgated by the City Barber Board pursuant thereto and will thereby tend to protect the health and safety of the public and protect barbers, apprentices, and others connected with the occupation of barbering, from long, unreasonable and unhealthful hours of service and from inadequate means of complying with health regulations. * * *

" 'Licensee' shall mean any person who works at the occupation of barbering for compensation, whether employer or employee or as an apprentice; it shall have the meaning now defined by law and hereby adopted for the purpose of interpreting this Ordinance.

"The terms 'public barber shop' and 'barber shop' and 'establishment,' as used in this Ordinance, shall be taken to mean and include all such premises as are commonly known by the term 'barber shop' and shall include all premises or portions thereof wherein the business of shaving, clipping, cutting, trimming, singeing, shampooing, massaging, manicuring the human hair, face, scalp, or hands is conducted for a fee, charge or hire. * * *

"If the board shall find, after investigation, that the minimum prices fixed in the City of Gadsden are insufficient to provide adequate service and/or facilities for protecting the public health and safety, the board may present to the City Commission its findings and recommendations and suggestions concerning said findings, and if approved and concurred with, the City Commission may by resolution or other official act require a revision of the scale of prices originally fixed by the licensees affected thereby and by official order change or vary the scale of prices as aforementioned. * * *

"The owner, manager or operator of, and every barber employed or working in, any barber shop, college or school, or other establishment where barber services are furnished or offered to the public, shall observe and comply with each of the sections of this Ordinance and every part thereof in operating or working in any such place. * * *

"Every shop shall be supplied with an adequate supply of both hot and cold running water which must be connected with the city system. If city water system is not available, then a tank or gravity pressure container must be used.

"If the city sewage system is available it must be used; if not available, a drainage system leading from the building must be installed.

"Combs and brushes must be cleaned, then immersed in a one to one thousand solution of bichloride of mercury, or some equally effective disinfectant for at least three minutes after the use of said articles upon a patron. Combs must be left in the disinfecting solution at all times when not being used."

Said ordinance makes many other provisions regulating sanitation and health, covered by Title 22, §§ 60–71 et seq., Code of 1940.

The ordinance confers on said City Barber Board among others, the following powers and duties:

"The City Barber Board shall adopt and enforce all rules and orders necessary to carry out the provisions of this Ordinance. All rules and orders of the Board shall be printed and posted for public inspection in the office of the Secretary of the City Barber Board and furnish each shop with a copy, including all minimum prices and all opening and closing hours and holidays, as set out in this ordinance and/or those made and set by the board of City Commission. The posting in the office of the Secretary of the City Barber Board of any rule or order not herein required to be served upon any person shall be and will constitute due and sufficient notice to all persons affected by rule or order and shall be binding upon them.

"After the minimum prices have been adopted by the passage of this Ordinance, it shall be unlawful for the Licensees and any Licensee in the City of Gadsden, Etowah County, Alabama to advertise and display to the public by word or figures visible on or through the windows or doors, or on the exterior portion of such shop, the prices charged therein, or advertising in any form of prices mentioned.

"For the purpose of ascertaining the reasonableness and propriety of all agreements submitted the *City Barber Board,* it shall have the power to subpoena barbers, apprentices, or any other personnel from whom such information may be desired, their records, books, and accounts, and may issue commissions to take depositions of witnesses absent from the city; any member of the City Barber Board or designated representative for that purpose may sign and issue subpoenas and may administer oaths to witnesses.

"The practice and procedure of the City Barber Board with respect to any investigation authorized by this Ordinance shall be in accordance *with rules and regulations to be promulgated by the City Barber Board* which shall provide for a reasonable notice and hearing to all persons who are to be affected by orders to be made by the City Barber Board after investigation; opportunity to be heard either *in person or by counsel,* or both, introduce testimony of documentary evidence in their own behalf at any public hearing to be held for that purpose.

"The Board is hereby vested with such general powers as are necessary for *administering and enforcing this Ordinance and may* act as mediator and arbitrator in any controversy or issue that may arise among or between barbers as between themselves or that may arise between them as groups, provided, however, that nothing contained in this Ordinance shall be construed to *effect the status, force, or operation of any regulation of the City Board of Health or of any Health Ordinance now vested in the Department of Health.*

"Any person, firm or corporation violating any provision of this Ordinance, upon conviction therefor, shall be fined not less that one ($1.00) dollar, and not more than One Hundred ($100.00) Dollars, or by imprisonment in the City Jail not exceeding 90 days, or both, *each day during which* such violation shall continue, shall be deemed a separate violation and shall be punishable as such." [Italics supplied.]

The City Barber Board is empowered to grant permits and charge therefor from $3 to $5 and use the fees arising therefrom in enforcing its health regulations, the pay of a secretary, and any surplus therefrom to be paid into the city treasury, and the said board is empowered, "with the approval of the City Commission", "to decline to grant permits" or "suspend or revoke permits already granted" upon "notice and hearing, with the right of the licensee" to "make an appeal from the action of the Board by way and manner of certiorari."

█ This ordinance is patently in conflict with § 6, Title 22, Code of 1940, which provides: "No local board of health, or other executive body for the exercise of public health functions, other than the county board of health, shall be established or exist in any county or municipality. Nor shall any municipality have a municipal health officer or other like officer. Nor shall any board, body, or organization, or any official or person, acting or claiming to be under any federal authority or acting without claim of federal or state authority, engaged in any public health work, except under the supervision and control of the state board of health."

This section is a codification of the Acts of 1919, p. 909, and 1935, p. 926; in force at the time said ordinance was adopted.

The provisions of the ordinance, being inconsistent with the laws of the state, the city was without power to adopt it, and it is void. Code of 1940, Title 37, § 455; Constitution 1901, § 89.

And under the repeated rulings here, the ordinance in undertaking to regulate a private business, violates § 1 of the Declaration of Rights. Constitution 1901, § 1; City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266, 111 A.L.R. 349; Alabama Independent Service Station Ass'n et al. v. McDowell, Sheriff et al., ante, p. 424, 6 So.2d 502.

It is well established that "the mere declaration by the Legislature that a particular kind of property or business is affected with a public interest is not conclusive upon the question of the validity of the regulation. The matter is one which is always open to judicial inquiry." Tyson & Bro. United Theatre Ticket Offices, Incorporated v. Banton, District Attorney et al., 273 U.S. 418, 431, 47 S.Ct. 426, 428, 71 L.Ed. 718, 58 A.L.R. 1236; Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 536, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280.

Certainly, the City of Gadsden is without authority to declare that a business is affected with a public interest. Such declaration is inconsistent with the general law of the state and nation.

The insistence of the individuals constituting the City Board of Barbers that the bill was prematurely filed is without merit.

They admit that they were proceeding to qualify, and would, if the ordinance is upheld, proceed to enforce it as a valid ordinance.

The circuit court ruled in accordance with the foregoing views, and the decree is due to be affirmed. It is so ordered by the court.

Affirmed.

GARDNER, C. J., THOMAS, and FOSTER, JJ., concur.