53 So.2d 752

**HICKMAN et al. v. CITY OF MOBILE et al.**

1 Div. 436.

Supreme Court of Alabama.
June 30, 1951.

Vernol R. Jansen, Mobile and Rives & Godbold, Montgomery, for appellants.

Harry Seale and Robt. T. Cunningham, Mobile, for appellees.

BROWN, Justice.

The Board of Commissioners of the City of Mobile, a municipal corporation, chartered and existing under the laws of this state, acting through the city commission elected by the resident electors of said city, on July 11th, 1950, passed, adopted and promulgated an ordinance providing that, "on and after the 17th of July, 1950, it shall be unlawful for any member of the Police Department of the City of Mobile to be or to become a member of any labor union as that term is commonly used, whether the union be associated with the A.F.L. or the C.I.O. or any other national labor organization, and it shall be unlawful for any member of such department to participate in the organization of such a union.

"Section Two: On and after the 17th day of July, 1950, it shall be unlawful for any member of the Fire Department of the City of Mobile to be or to become a member of any labor union as that term is commonly used, whether the union be associated with the A.F.L. or the C.I.O. or any other national labor organization, and it shall be unlawful for any member of such depart-

ment to participate in the organization of such a union.

"Section Three: Each and every employee of the Police Department of the City of Mobile shall on or before the 17th day of July, 1950, sign and deliver to the Chief of Police of the City of Mobile the Following statement, and failing therein shall immediately have his services with the department terminated:

"I do not belong to any labor union as that term is commonly known, whether the union be affiliated with the A.F.L. or C.I.O. or any other national labor organization, and I bind myself not to join such a union or to participate in the organization of such a union as long as I remain a member of the department."

Section Four requires the same statement from members of the Fire Department of the City of Mobile.

As above indicated the ordinance requires all such employees on or before the date mentioned to disavow membership, participation and purpose to join such labor organization, such disavowel, as we construe the ordinance, to be in writing signed by the employee and delivered to the head of his department and "failing therein shall immediately have his services with the department terminated."

No provision is made in the ordinance for an employee who, before its adoption may have joined and become a member of or affiliated with such labor organization, to renounce his membership in such labor organization and preserve his right to retain his status as an employee of the City of Mobile.

The appellants as complainants in behalf of themselves and all other employees similarly situated, filed the bill seeking to enjoin the enforcement of said ordinance, alleging that they each by long and faithful service have a status of seniority entitling them to preference and credits in promotional examinations and certain retirement rights under the retirement laws and ordinances of the City of Mobile; that they are each able-bodied, physically and mentally qualified for the duties assigned to them at the time of filing the

bill; that there are no pending charges of misfeasance or malfeasance and that their efficiency rating justifies their continuance in the employment in the capacity and positions which they are employed in at the time the bill was filed. The bill is filed against the City of Mobile, its commissioners and governing board, the chief of police and the chief of the fire department under whom they are respectively employed, who have given notice and threatened to enforce said ordinance as written and adopted and that under the terms of said ordinance their rights to continue their respective employment and their accumulated rights thereunder have been placed in jeopardy.

The bill further alleges as follows: "Complainants further show that the International Association of Fire Fighters, commonly known as a Labor Union, is affiliated with the American Federation of Labor, that complainants Thrasher and Wilkinson are members in good standing of said organization, and that the objects and purposes of said organization are set out in its Constitution, Article 3, Sections 1, 2 and 3 as follows:

### "Article III

"Section 1. The objects of the International Association of Fire Fighters shall be: To organize all Fire Fighters; to place the members of this Association on a higher plane of skill and efficiency; to encourage the formation of local unions; to encourage the formation of sick and death benefit funds; to encourage the establishment of schools of instruction for imparting knowledge of modern and improved methods of fire fighting and prevention; and the cultivation of friendship and fellowship among its members.

"Section 2. We shall not strike or take active part in any sympathetic strike, since the work of fire fighters is different from that performed by any other workers, as we are employed to perform the duties of protecting the lives and property of communities in case of fire or other serious hazards.

"Section 3. The International Association of Fire Fighters shall be non-partisan

and shall not be used for the dissemination of partisan principles, nor for the promotion of candidacy of any person seeking public office or preferment.

"Complainants Hickman and Prine are members in good standing of Local 1001 of the American Federation of State, County and Municipal Employees, an organization commonly called a Labor Union whose objects and purposes are set out in its Constitution and in its charter which provided among other things, 'This Charter is issued with the understanding by both parties hereto that it will be revoked immediately if the members of Local 1001 call or participate in a strike or refuse to do their duties as police officers.'

"Complainants allege that neither of said organizations are subversive or affiliated in any way with disloyal policies or idealogies, and neither organization proposes nor supports the strike as a method of settling disputes as to compensation or working conditions, or any other purpose, arising between employer and employee, and neither organization fosters nor permits neglect of duty or other than primary loyalty to the City of Mobile by the Complainants or other police or fireman.

"Wherefore, pursuant to the terms of said ordinance the officials named as respondents declare that the employment of your complainants and others similarly situated, will be terminated for association, membership, or affiliation with Labor Organizations of any kind or nature without regard to the years of service, the accrued rights of retirement, the seniority, or the quality of service of the employees of the Police or Fire Departments of the City of Mobile and these complainants file this proceeding on behalf of themselves and any other members of the Police and Fire Department of the City of Mobile whose employment situation is affected by the terms of said ordinance."

The bill further alleges: "Complainants further show that the passage of said ordinance is ultra vires, unconstitutional and void, and the terms of same are unconstitutional, unlawful, and void; that said ordinance violates the terms of the employment under which your complain-

ants are working, that it attaches to said employment, conditions which are unreasonable, and ultra vires and which deprive the complainants of rights guaranteed by the Constitution and Laws of the United States of America and the State of Alabama, that said ordinance seeks to regulate the social, political and private life of complainants and deprive them of a right to work and property without due process of law."

After prayer for process the bill further prays for the issuance of "a temporary injunction; enjoining, restraining, and forbidding the respondents and other officers, employees, agents, or servants of said respondents, (1) to enforce the terms of the ordinance as set out in Exhibit A hereto; (2) to enforce or threaten to enforce, the provisions of said ordinance requiring the filing of a statement or affidavit in the words and form set out in said ordinance; (3) from suspending or discharging your complainants and others in the Police and Fire Departments similarly situated for violation of the terms of said ordinance, (4) from the requirement that employees of the Police and Fire Department may not in the future affiliate with an organization known as a labor union, and (5), from depriving your complainants and others similarly situated from the enjoyments of the benefits accruing to complainants from years of service, retirement and other provisions of their present employment contract.

"Complainants further pray that on hearing of this cause, this Honorable Court will enter a decree perpetually enjoining the respondents their officers, servants, and agents from the acts as above set out in each of the foregoing particulars. And if the complainants have not asked for the proper relief, and if said injunction, either temporary or permanent, may not properly be complainants pray that this complaint be taken for a bill for a Declaratory Judgment, and this Honorable Court will be pleased to determine the Constitutionality of the ordinance set out in Exhibit A, and the rights of your complainants and others similarly situated under said ordinance, and that such other and different re-

lief be granted to your complainants as to your Honors may seem meet."

After the application for temporary injunction was set down for hearing and a hearing thereon had and the application refused, the defendants demurred to the bill for want of equity and on sundry grounds, in substance, asserting that the governing board of the City of Mobile in the adoption of said ordinance acted within the scope of its power and has not impinged the constitutional rights of complainants or others whose protection is sought. On submission on the demurrer the court entered a decretal order sustaining the demurrer and from that decree the complainants have appealed.

█ In a preamble to the ordinance adopted and here subject to legal attack the city commission embodied the resolution passed by the legislature at its regular session in 1939, reciting the fact that it had come to the knowledge of that body that the American Federation of Labor was seeking to organize employees of the state and its agencies and that it was the sense of the legislature (the house and senate concurring), that the effort to organize state employees supported by the taxpayers' money, Jew, Catholic and Protestant alike, was viewed with grave concern and disfavor by the legislature and in effect declaring that such organization was contrary to the public policy of the state. Also embodied in the preamble was the opinion of the then attorney general to the effect that such resolution established public policy of the state against employees of the state and its subordinate governments, cities and towns, joining such organization and that such membership would violate the public policy of the state. Said preamble also embodied pronouncements of the courts of last resort of several of the states of the Union to the same effect and the declaration of prominent officials, including the Mayor of the City of Los Angeles, California, declaring that such practices are repugnant to the "principles of Democracy." We note in passing that in a letter of President Roosevelt dated August 16, 1937, to the National Federation of Federal Employees, a document of which the court may take judicial notice, the late President said:

"All government employees should realize that the process of collective bargaining as usually understood, cannot be transplanted into public service. It has its distinct and unsurmountable limitations when applied to public personnel management. The very nature and purpose of government make it impossible for administrative officials to represent fully or to bind the employer in mutual discussions with government employee organizations. The employer is the whole people, who speak by means of laws enacted by their representatives in Congress. Accordingly administrative officials and employees alike are governed and guided and in many instances restricted, by laws which establish policies, procedures, or rules in personal matters."

█ It is well settled that the basic concept underlying the formation of cities and towns—municipal corporations—is local self government. In State ex rel. Wilkinson et al. v. Lane, 181 Ala. 646 (653–654), 62 So. 31, 32, this court observed: "Town law found its origin in, and owed its development to, the principle of local self-government, the basic principle upon which all Teutonic governments rest. An Englishman might be proud to acknowledge himself the vassal of an English king, but when he claimed shelter under his own roof, he demanded that he should there be the 'king in his own house.' The dwellers in towns were perfectly willing to be the king's subjects, to obey his laws, and they were also willing that their towns should be the king's towns, but they demanded and received the right to govern the towns in which they lived, in accordance with their own regulations not in contravention of the general laws of the realm. The towns were the king's towns. Their inhabitants were the king's subjects, and they paid obedience to those who held office under the king; but the officers of a town were town officers, and the laws adopted by its people for their government as citizens of the town were town laws.

" 'No alien officer of any kind, save only the judges of the High Court, might cross

the limits of their liberties; the sheriff of the shire, the bailiff of the hundred, the king's tax-gatherer or sergeant at arms, were alike shut out. The townsfolk themselves assessed their taxes, levied them in their own way, and paid them through their own officers. They claimed broad rights of justice, whether by ancient custom or royal grant; criminals were brought before the mayor's court, and the town prison with its irons and its cage, the gallows at the gate or on the town common, testified to an authority which ended only with death.

"'In all concerns of trade they exercised the widest powers, and bargained and negotiated and made laws as nations do on a grander scale to-day. They could covenant and confederate, buy and sell, deal and traffic after their own will; they could draw up formal treaties with other boroughs, and could admit them to or shut them out from all the privileges of their commerce; they might pass laws of protection or try experiments in free trade.' 1 McQuillin, Mun.Corps. 102, note 81."

Chapter 9, Title 37, Code of 1940, embracing § 455 through § 464, is part of the charters of cities and towns in this state. The first mentioned section provides:

"455. *Power to adopt and enforce ordinances.*—Municipal corporations may, from time to time, adopt ordinances and resolutions not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding one hundred dollars, and by imprisonment or hard labor not exceeding six months, one or both."

Under the charter powers embodied in §§ 50 and 455, Title 37, Code of 1940, the governing boards of municipalities are invested with plenary power in the selection of their employees, in prescribing their qualifications and the tenure of such employment. Under said charter provisions such governing boards may refuse employment and prohibit the service of any one or all of such employees who are members of labor organizations, which are not only national but international in scope and purpose and therefore their organization being opposed to and the direct antithesis of the basic purposes of local self government for which cities and towns in Alabama are established. This power is essential to the preservation of the character and life of such municipalities. Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626; King v. Priest, 357 Mo. 68, 206 S.W.2d 547, appeal dism., 333 U.S. 852, 68 S.Ct. 736, 92 L.Ed. 1133, rehearing den. 333 U.S. 878, 68 S.Ct. 901, 92 L.Ed. 1154; City of Jackson v. McLeod, 199 Miss. 676, 24 So.2d 319, [certiorari denied 328 U.S. 863, 66 S.Ct. 1368, 90 L.Ed. 1, 633]; Fraternal Order of Police v. Lansing, 306 Mich. 68, 10 N.W. 2d 310, [certiorari denied 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076]; Miami Local Water Works v. City of Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967; Coane v. Geary, 298 Ill.App. 199, 18 N.E.2d 719; Hutchinson v. Magee, 278 A. 119, 122 A. 234; Carter v. Thompson, 164 S.E. 312, 180 S.E. 410; McNatt v. Lawther, Tex. Civ.App., 223 S.W. 503; San Antonio Fire Fighters Local v. Bell, Tex.Civ.App. 223 S.W. 506; C.I.O. v. Dallas, Tex.Civ.App. 198 S.W.2d 143.

The bill in this case alleges that the complainants before the adoption of this ordinance were employees of the City of Mobile in their respective capacities as alleged in the bill and that through long service they have acquired certain privileges and rights respecting promotion and other benefits of which, as a matter of common honesty as well as constitutional law, they should not be deprived by mere legislative *ipsi dixit.* As pointed out in the statement of the case, no provision is made in said ordinance allowing such employees thus situated to renounce their allegiance to such labor organizations and retain their rights of employment under the government of the city of their residence. According to the terms of the ordinance, their affiliation with and membership in such labor organizations *ipso facto* terminates their employment without notice, trial or the right to be heard and appeal. In the re-

spect last above mentioned the provisions of said ordinance and §§ 3 and 4 thereof run counter to and conflict with Act No. 470, creating for the County of Mobile and the municipalities therein situated a "countywide Civil Service System", Local Acts 1939, pp. 298–318, which provides *inter alia*:

"Section I. * * * 'Classified Service' includes all offices, positions, and employment in Mobile County or any such city therein as these offices, positions and employment now exist or as they may hereafter exist, the holders of which are paid whether by salary, wages, or fees in whole or in part from funds of Mobile County or any such city, or the holders of which receive their compensation from any elected official and perform duties pertaining to the office of such elected official or officer, except those placed in the 'Unclassified Service' by Section Two hereof. * *

* * * * * *

"Section XXII. Dismissal: (a) An Appointing Authority may dismiss a Classified Employee whenever he considers the good of the service will be served thereby, for reasons stated in writing, served on the affected employee, and a copy furnished to the Director, which action shall become a Public Record; the dismissed employee may, within ten days after notice, appeal from the action of the Appointing Authority by filing a written answer to the charges. The Board may after investigating order a Public Hearing upon notice to, and opportunity to be heard by, the employee and if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the Board may determine. (b) In addition to removal by an Appointing Authority, persons in the Classified Service may be removed or disciplined in the following manner. Charges may be filed by any officer, citizen, or taxpayer of the County with the Director who may after investigation cause a copy to be served upon the person complained against and set a day for a Public Hearing of such charges. This hearing may be before the Director, a special agent appointed for the purpose by the Director, or the Board itself. If be-

fore the Director or a special agent, the Director or special agent shall take testimony offered in support and denial of such charges and from the same submit to the Board, within five days, a finding of facts (and law involved) and a recommended decision. The Board at its next regular or special meeting shall consider said report and modify, alter, set aside or affirm said recommendation and certify its findings to the Appointing Authority who shall forthwith put the same into effect. If the Board hears said Charges directly or requires the Transcribing and Submission of the testimony taken before the Director or special agent, it shall make up and file its own findings and decision. The findings of fact of the Board based upon its records and the testimony taken before it, or before the Director shall be conclusive if supported by any substantial evidence. (c) In proceedings under this section it shall be no defense or excuse for a forbidden act, or for an omission to observe the laws or rules, that such act or omission was directed by a superior, unless a direction or order from such superior to that effect is proved to the satisfaction of the Board."

Said sections 3 and 4 of the ordinance under consideration, therefore, *ipso facto* are "inconsistent with the laws of the State" and are *ultra vires* the power of the board of commissioners. Code of 1940, Title 37, § 455; Lisenba et al. v. Griffin et al., 242 Ala. 679, 8 So.2d 175.

In an attempt to answer the challenge that the ordinance in question is inconsistent with the provisions of Act No. 470 (the Civil Service Act), the brief of appellees asserts that, "Section 22 of the local Civil Service Act provides that the City may dismiss any classified employee whenever it considers the good of the service will be served thereby. Undoubtedly the Board of Commissioners of the City of Mobile determined that the good of the service would be served by dismissing any employee of the two departments belonging to a labor union affiliated with a national organization, and it had the express authority under the local merit system act to dismiss the men for that reason."

The statement exposes the fallacy of the contention that the ordinance and the act of the legislature are not in conflict. The civil service act contains no such provision and preserves no such power in the commission. The section of the act referred to provides:

"(a) An *Appointing Authority* may dismiss a Classified Employee whenever *he* considers the good of the service will be served thereby, for reasons stated in writing, served on the affected employee, and a copy furnished to the Director, which action shall become a Public Record; the dismissed employee may, within ten days after notice, appeal from the action of the Appointing Authority by filing a written answer to the charges. The Board may after investigating order a Public Hearing upon notice to, and opportunity to be heard by, the employee and if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the Board may determine. * * " (Italics supplied.) The board referred to is the civil service board set up under the civil service act.

These provisions of the act clearly contemplate administrative or ministerial action in dismissing an employee, not legislative ouster, and there is nothing in the civil service act nor in the general law of the state that conferred authority on the city commission to ignore or repeal the civil service act or § 455, Title 37, Code of 1940, which restricts the legislative power of the city commission and prohibits said commission from enacting or adopting an ordinance inconsistent with the state law.

■ The statement in brief above quoted recognizes the fact that unless the city commission possessed legislative power to enact said ordinance couched in the language in which it was written and by which its validity must be determined, the ordinance violates the restriction placed on the commission by § 455 of the code and the civil service act passed by the legislature for the government of the commission's actions in dealing with the subject of dismissing employees. The contention that said ordinance is not in conflict with the state law, so far as it undertakes to dismiss employees

for past acts which when performed were not violative of law, ignores the express provisions of both the section of the code and the civil service act. The validity of the ordinance must be determined by its expressed provisions. Barton v. City of Bessemer, 234 Ala. 20, 173 So. 626. Therefore, whether the bill be treated as one seeking an injunction against the enforcement of such ordinance or a bill for a declaratory judgment, it presents but a single justiciable question,—the validity of said ordinance as written and passed. Barton v. City of Bessemer, supra; Lisenba et al. v. Griffin et al., 242 Ala. 679, 8 So.2d 175; Keokee Consol. Coke Co. v. Taylor, 234 U. S. 224, 34 S.Ct. 856, 58 L.Ed. 1288.

■ Said sections 3 and 4 of said ordinance being retroactive and inconsistent with the laws of the state, are also violative of the constitutional provisions against *ex post facto* laws. Ex parte Diggs, 52 Ala. 381. Therefore said sections must be pronounced void and hence the bill was well filed and defendants' demurrer thereto was erroneously sustained.

The decree of the circuit court is, therefore, reversed and one here rendered overruling the same and the cause is remanded.

Reversed, rendered and remanded.

All the Justices concur in the result.

CRENSHAW, Special Justice, concurs in part as stated in the following opinion.

FOSTER and SIMPSON, JJ., concur in the opinion of CRENSHAW, Special Justice.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., state their views in the following opinion of LAWSON, J.

CRENSHAW, Special Justice (concurring).

I concur in the conclusion that the court below erred in sustaining the demurrer to the bill of complaint and that the cause must be reversed.

The bill of complaint seeks an injunction restraining the enforcement of an ordinance of the City of Mobile, and in the

alternative a declaratory judgment determining the constitutionality of the ordinance "and the rights of your complainants and others similarly situated under said ordinance."

The ordinance of July 11, 1950, in question is in five sections. Sections 1 and 2 make it unlawful for any member of the Police Department (section 1) or Fire Department (section 2) to be or to become a member of any labor union as that term is commonly used. Sections 3 and 4 require every employee of the Police Department (section 3) and Fire Department (section 4) to sign and deliver, on or before July 17, 1950, a statement in writing that he does not belong to a labor union and will not join or participate in the organization of such a union as long as he remains a member of such department. Any employee "failing therein shall immediately have his services with the department terminated."

Section 5 of the ordinance provides "Section Five. If any section or provision of this ordinance shall be held invalid by a court of competent jurisdiction such holding shall not affect or void any other section or provision which is not of itself invalid."

The cases of other jurisdictions uniformly uphold the authority of the municipality to prohibit membership in a labor union by members of the Police and Fire Departments, and to require the dismissal of employees who refuse to relinquish membership in a labor union. King v. Priest, 357 Mo. 68, 206 S.W.2d 547; City of Jackson v. McLeod, 199 Miss. 676, 24 So.2d 319; Fraternal Order of Police v. Lansing, 306 Mich. 68, 10 N.W.2d. 310, certiorari denied, 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076; Miami Water Works Local v. Miami, 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967; Coane v. Geary, 298 Ill.App. 199, 18 N.E.2d 719; Hutchinson v. Magee, 278 Pa. 119, 122 A. 234; Carter v. Thompson, 164 Va. 312, 180 S.E. 410; McNatt v. Lawther, Tex.Civ.App., 223 S.W. 503; San Antonio Fire Fighters Local v. Bell, Tex.Civ.App., 223 S.W. 506; C. I. O. v. Dallas, Tex.Civ. App., 198 S.W.2d 143. The case relied upon by appellants, Mugford v. Mayor & City Council, 185 Md. 266, 44 A.2d 745, 162 A.L.R. 1101, did not involve policemen or firemen.

Appellants argue that such rule is not applicable in Alabama and that the effect of the Bradford Act, Title 26, § 376, et seq., Code 1940 is to protect the right of policemen and firemen to join a labor union. A careful reading of the title and body of the Bradford Act discloses no language evidencing a legislative intent to make such act applicable to municipalities. The reference in the Bradford Act to strikes, walkouts and boycotts, §§ 377, 380, 381, to the "business of an employer," § 387, and to "business, plant or any unit thereof" are particularly inapplicable to municipalities. Had the legislature intended to change the existing powers of the City of Mobile there is no reason to believe that it would not have said so in that many words, instead of leaving the matter to speculation and conjecture. The ordinance in question is therefore not invalid as being in conflict with the Bradford Act. Miami Water Works Local v. City of Miami, supra; King v. Priest supra; C. I. O. v. Dallas, supra; McNatt v. Lawther, supra.

Appellants also contend that the ordinance is unconstitutional as depriving them of freedom of speech or their right peaceably to assemble and to petition the government for redress or grievances. We find nothing in the ordinance which violates these constitutional guarantees. This same argument was advanced in King v. Priest, supra, and C. I. O. v. Dallas, supra. The Supreme Court of Missouri disposed of this contention with the following quotation, 206 S.W.2d 556: "In the case of McAuliffe v. Mayor, etc., of the City of New Bedford, 155 Mass. 216, 29 N.E. 517, decided January 6, 1892, Justice Holmes in upholding a rule excluding police from political activity stated: 'The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman. There are few employments for hire in which the servant does not agree to suspend his constitutional rights of free speech as well as of idleness by the implied terms of his contract. The servant cannot complain, as he takes the employment on the terms which are offered him. On the same

principle the city may impose any reasonable condition upon holding offices within its control.' "

It is further contended that the ordinance in question conflicts with the county-wide Civil Service Act applicable to Mobile County and the City of Mobile, Act. No. 470, Local Acts, 1939, p. 298, et seq. In so far as Sections 1 and 2 of the ordinance are concerned I find no such conflict. This Act provides for the establishment of a Personnel Board and the appointment of a Personnel Director; for the Classification of Positions, section X, and the Establishment of a Pay Plan. The Personnel Director is required to conduct tests to establish Employment Registers for the various classes of positions in the qualified service, section XII. Section XV providing for the filling of vacancies by appointment specifically recognizes the right of the Appointing Authority to state the "desired qualifications of the person to be appointed," and contains the provision "provided that where residence qualifications are prescribed by the Appointing Authority" only those having such residence qualifications may be selected. This language plainly recognizes the right of the city to establish reasonable qualifications for positions of policemen and firemen. The Act is designed to secure to every employee fair and impartial treatment without political favoritism. But the Board of Commissioners of the City of Mobile remains the governing body of that municipality. Upon it rest the right and the burden of establishing and declaring the public policy of the city. Upon it rests the burden of furnishing public police and fire protection to its citizens by the establishment and maintenance of an impartial and efficient police and fire department. This burden necessarily carries with it the right to establish reasonable qualifications in order to secure the undivided loyalty of the members of the police and fire departments. Sections 1 and 2 of the ordinance, declaring the public policy of the city and establishing such reasonable qualifications are not in conflict with the Civil Service Act. Cf. Gen. Acts, 1939, p. 1004.

Whether the ordinance was wisely conceived we are not called upon to determine.

Sections 1 and 2 of the ordinance making it unlawful for policemen and firemen to be or to become members of a labor union are not in conflict with any statute of the state and their enactment is a valid exercise of the power to adopt ordinances conferred by Section 455, Title 37, Code 1940.

A different question arises as to the validity of Sections 3 and 4 of the ordinance of July 11, 1950, which provide a means of enforcing the qualifications so established by Sections 1 and 2 of the ordinance.

Section 3 provides: "Section Three. Each and every employee of the Police Department of the City of Mobile shall on or before the 17th day of July, 1950, sign and deliver to the Chief of Police of the City of Mobile the following statement, *and failing therein shall immediately have his services with the department terminated:* 'I do not belong to any labor union as that term is commonly known, whether the union be affiliated with the A. F. L., or C. I. O., or any other national labor organization, and I bind myself not to join such a union or to participate in the organization of such a union as long as I remain a member of the department.' "

Section 4 sets out the same requirement as to members of the Fire Department.

I cannot agree that these sections deprived the appellants of an opportunity to renounce or resign membership in a labor organization, place themselves in compliance with Sections 1 and 2 of the ordinance and retain their employment. The ordinance was passed July 11, 1950. The statement in question need only be filed "on or before July 17, 1950." In such statement the employee is not required to certify that he has not belonged to a labor union, but that "I do not belong to any labor union," etc. The use of the present tense "I do" shows that this certification was intended to reflect the status as of the time the statement was signed and filed, which could be at any time prior to and including July 17, 1950. The appellants therefore had the period between the passage of the ordinance on July 11, 1950, and the end of July 17, 1950, within which, if they so desired, they could renounce membership in the labor

union and place themselves in compliance with the ordinance.

In the case of City of Jackson v. McLeod, supra, the Mayor and Commissioners of the City of Jackson on June 17, 1944, ordered the Chief of Police to notify all policemen that no Policeman should be a member of a labor union, and that any policeman who did not resign by Noon on June 19, 1944, would be dismissed. The interim period was much shorter than the period here allowed, but the dismissal was upheld by the Supreme Court of Mississippi. In the case of King v. Priest, supra, the resolution was adopted November 29, 1945, requiring such statement to be filed not later than midnight December 5, 1945— the same period as here allowed. The Supreme Court of Missouri upheld the regulation and the Supreme Court of the United States dismissed appeal to that court. 333 U.S. 852, 68 S.Ct. 736, 92 L.Ed. 1133, rehearing denied, 333 U.S. 878, 68 S.Ct. 901, 92 L.Ed. 1154. It would therefore seem that the period from July 11, 1950 to July 17, 1950 was a reasonable time within which the appellants could resign or renounce their membership and retain their employment with all accrued privileges of seniority.

The determination of whether Sections 3 and 4 conflict with the county-wide Civil Service Act, Act. No. 470, Local Acts, 1939, p. 298–318, depends upon construction of the provisions of the ordinance requiring the filing of the specified statement by every policeman and fireman "and failing therein shall immediately have his services with the department terminated." Ordinarily this court will not construe a statute or ordinance on appeal from a ruling on demurrer. · Alabama Ice & Utilities Co. v. City of Montgomery, 252 Ala. 131, 40 So. 2d 198; McCall et al. v. Nettles et al., 251 Ala. 349, 37 So.2d 635; City of Bessemer v. Bessemer Theatres, 252 Ala. 117, 39 So.2d 658, 660; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11.

Under these decisions where the bill for declaratory judgment shows a bona fide justiciable controversy the demurrer thereto should be overruled and a declaration of rights made and entered after answer and on such evidence as the parties

may deem proper to introduce. However the equity of the bill is not dependent upon the Declaratory Judgment Act,— Title 7, § 156. That relief is sought only in the alternative.

The bill seeks to enjoin the enforcement of the ordinance alleged to be void and whose enforcement would limit the personal rights of the appellants. Such alleged invalidity is based in part on its alleged conflict with state laws and if Sections 3 and 4 of the ordinance are invalid, the bill has equity to enjoin the enforcement of such without regard to the Declaratory Judgment Act.

I concur in the conclusion of the opinion of Justice Brown that the provisions of Sections 3 and 4 of the ordinance are in conflict with the Civil Service Act and are therefore ultra vires and invalid.

It is undisputed that the appellants are "classified employees" as defined· in that Act and their dismissal must be in compliance with Section XXII, which provides: "Section XXII. Dismissal: (a) An appointing authority may dismiss a Classified Employee whenever he considers the good of the service will be served thereby, for reasons stated in writing, served on the affected employee, and a copy furnished to the Director, which action shall become a Public Record; the dismissed employee may, within ten days after notice, appeal from the action of the Appointing Authority by filing a written answer to the charges. The Board may after investigating order a Public Hearing upon notice to, and opportunity to be heard by, the employee and if the charges are proved unwarranted, order the reinstatement of the employee under such conditions as the Board may determine."

Under this section a dismissal of an employee must be for the good of the service and the employee is entitled to service upon him of a copy of formal written charges. The City of Mobile, through its Board of Commissioners, having established the public policy of the city as to union membership by policemen and firemen a charge of retaining membership in a union in violation of Sections 1 and 2 of the ordi-

nance would be ground for dismissal "for the good of the service," but such dismissal could only be effected in the manner prescribed by the Civil Service Act and not by legislative edict of the Board of Commissioners. Sections 3 and 4 of the ordinance providing for the filing of the required statement by every policeman and fireman and "failing therein shall immediately have his services with the department terminated," in my judgment do not contemplate the filing of charges as required by Section XXII of the Civil Service Act. In addition thereto these facts make the dismissal dependent, not upon a violation of Sections 1 and 2 of the ordinance but merely upon the failure to file the prescribed statement whether the policeman or fireman so failing is or is not a member of a union in violation of Sections 1 and 2. It is entirely conceivable that within the six day period allowed there were policemen and firemen who were not members of the union, who, by reason of vacations or other absences, failed to file the prescribed statement. In my opinion peremptory dismissal for such failure alone would not be justified under the Civil Service Act. For these reasons I am of the opinion that Sections 3 and 4 of the ordinance are invalid and the appellants are entitled to a decree enjoining their enforcement and enjoining any dismissal except by proceedings in accordance with the Civil Service Act.

FOSTER and SIMPSON, JJ., concur.

LAWSON, Justice (concurring specially).

I am of the opinion the decree appealed from must be reversed for the reason that the bill states a case for the rendering of a declaratory judgment defining the rights of the parties under the ordinance assailed. City of Bessemer v. Bessemer Theatres, 252 Ala. 117, 39 So.2d 658.

I am in accord with the conclusion reached that a municipality may legally adopt an ordinance prohibiting its policemen and firemen from being members of a labor union.

In my opinion, the ordinance under consideration does not deprive the affected city employees from severing any connection which they might have had with labor organizations. Such action could have been taken subsequent to the date of enactment of the ordinance and the date prescribed for the filing of the statement required by the ordinance. City of Jackson v. McLeod, 199 Miss. 676, 24 So.2d 319.

I cannot agree that §§ 3 and 4 of the the ordinance conflict with the terms and provisions of the act creating the merit system of the City of Mobile and Mobile County. True, those sections of the ordinance provide that employees who do not file the required affidavit shall immediately have their services terminated. But, in my opinion, this provision does not conflict with the terms of the aforementioned merit act. The merit act does not purport to deny to the governing authorities of the political subdivisions involved the power to dismiss employees. The act does not confer upon those charged with administering its provisions the power to dismiss employees. In this connection the merit act only sets up a procedure whereby the action of the governing authority in dismissing an employee is subject to review when the employee duly requests such a review. Sections 3 and 4 of the ordinance here under consideration contain no language which, in my opinion, is subject to be construed as purporting to deny to any employee dismissed because of his failure to file the required affidavit the right to have the action of dismissal reviewed by the merit system authorities. An employee so dismissed stands in the same position as any other employee who had been dismissed by the governing authorities. For his dismissal to be lawful, the city governing authorities must give him the notice required by the terms of the merit act and, upon such notice being given, he has the right to have the action of the city authorities reviewed. The inquiry on appeal would be whether the employee had failed to comply with the terms of the ordinance, for it cannot be said to be the power of the merit system authorities to pass on the propriety of the action of the

governing authorities in adopting the ordinance.

The construction placed on §§ 3 and 4 of the ordinance by the majority is, as I understand it, that an ordinance such as this, which is merely a declaration of policy, must contain express language showing that dismissals for failure to comply with the policy prescribed will be taken in accordance with the terms of the merit act. In my opinion this is entirely unnecessary. As before indicated, there is nothing in the act to support a conclusion that the city authorities, in enforcing the provisions of the ordinance, do not intend to comply with the provisions of the merit act relating to the dismissal of city employees.

LIVINGSTON, C. J., and STAKELY, J., concur in these views.