286 So.2d 872

**In re Bobby Joe ESTELL**

**v.**

**CITY OF BIRMINGHAM.**

**Ex parte CITY OF BIRMINGHAM, a municipal corporation.**

**SC 477.**

Supreme Court of Alabama.

Dec. 6, 1973.

William C. Walker, Birmingham, for petitioner.

Richard L. Taylor, Birmingham, for appellee.

McCALL, Justice.

The City's application for a writ of certiorari to the Court of Criminal Appeals in this case was granted because a decision of that court initially held invalid an ordinance of the City of Birmingham. Supreme Court Rule 39, Revised Rules of Practice in the Supreme Court, Appendix to Tit. 7, Code of Alabama, Recompiled 1958, Cummulative P.P.

Among other prohibitions, Section 6–45 of the Birmingham, Alabama, General Code, Chap. 6, Art. V (1964), declares it to be unlawful for any person to sell or dispose of a ticket to a theatrical performance, show, exhibition or entertainment of any name or nature at a higher price for admission than that advertised by the proprietor or manager. This section also declares it to be unlawful to sell any such ticket without the prices having first been advertised and posted.

Section 6–48 of the same code is of similar import and declares it to be unlawful to sell or offer for sale a ticket to a theatrical performance, show, exhibition, baseball game, football game or other entertainment at a greater price than advertised or sold by the manager of the event.

Bobby Joe Estell was convicted of violating the ordinance, he being found guilty of selling tickets to a football game to be played in Birmingham, at a greater price than the management had advertised and first sold the tickets.

The sections of the ordinance that are here involved and the stipulation of fact agreed upon by the parties are fully set out in the opinion of the Court of Criminal Appeals in the case of Estell v. City of Birmingham, 51 Ala.App. ——, 286 So.2d 866 (decided June 29, 1973).

We have carefully considered the opinion, rendered by that court in the case,

and are in agreement with the result that the activity engaged in by the defendant, Estell, in reselling football tickets at a greater price than that advertised by the proprietor or manager of the football game was not so affected with a public interest as to be the subject of a price fixing regulation under the police power of the City of Birmingham.

There probably are no fewer people affected by the varieties of public entertainment which could come within the purview of the instant ordinance, than are affected, in the same locality, in a different manner, by milk production which comes under the protection of the State's Milk Control Act. Tit. 22, § 205 et seq., Code of Alabama, Recompiled 1958, as amended. The business of producing and selling milk to the general public, though, is a business held by this court to vitally affect the public interest, which is tantamount to saying, "subject to the exercise of the police power," and to regulation and control, even to the extent of fixing prices. Franklin v. State, 232 Ala. 637, 169 So. 295. The vast difference between the ways in which public entertainment and milk affect the public is not arguable. Each affects the public to a great degree, but in a different manner. As to their relative attributes of importance, it would be difficult, if not impossible, to equate the two, because their qualities of value are so different. In ultimate importance to life, the two have a common ring, the tone of which is the betterment of life. In common parlance, one of these subjects would hardly be given preference over the other in considering what is in the "public interest" and the domain over which each sways. We have yet to find in this state, however, where the business of the resale of tickets for admission to places of public entertainment has been held to involve the "public interest."

Franklin v. State, 232 Ala. 637, 169 So. 295, is not an applicable authority for holding here that the public interest is involved, because there we were dealing with a legislative act fixing prices in the milk industry, which is a business recognized to be affected with a public interest.

In Simonetti, Inc. v. State, 272 Ala. 398, 132 So.2d 252, the basic holding is that a legislative act (Unfair Cigarette Sales Act, Act. No. 805, Acts of Alabama, 1951) prohibiting the advertising, offering for sale and selling of cigarettes below cost, with intent to injure competitors and destroy, or substantially lessen, competition, is within the legislative province.

Neither in *Franklin* nor in *Simonetti*, both supra, was the court concerned with a situation comparable to the aspects of this case. Here we are dealing with a law that tells a person he is prohibited from reselling his admission tickets for a greater sum than the proprietor or the manager of the event sold them for, or, he will be prosecuted and punished.

In City Council of Montgomery v. Kelly, 142 Ala. 552, 558, 38 So. 67, we said:

"The liberty which is so sedulously guarded by the Constitutions of the United States and of this and other states comprehends more than the mere freedom from personal restraint. It includes the right to pursue any useful and harmless occupation, and to conduct the business in the citizens' own way, without being discriminated against either by being prohibited from engaging in it or by being burdened with discriminative taxation. * * *

"So long as his manner of conducting his business does not offend public morals and work an injury to the public, it is his constitutional right to pursue, on terms equal to that allowed to others in like business, even though his methods may have a tendency to draw trade to him, to the detriment of competitors. [Citations omitted.]"

We have pointed out that where the industry is affected with a "public in-

terest" the legislature has power to regulate, Franklin v. State, supra; and, all public utilities are subject to state regulation. The legislature can also prohibit sales below cost, designed to injure or to destroy the business of a competitor. *Simonetti,* supra. The governing rule in this jurisdiction, as stated in Bulova Watch Co. v. Zale Jewelry Co., 274 Ala. 270, 271, 147 So.2d 797, is:

"* * * [T]hat before the legislature may regulate competitive prices or prohibit bona fide price cutting merely in the interest of fairness in competition, the business regulated must be affected with a public interest, otherwise such legislation would be violative of §§ 1 and 35 of the 1901 Constitution of Alabama. City Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 70 L.R.A. 209; City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266, 111 A.L.R. 349; Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175; Alabama Independent Service Station Assn. v. Hunter, 249 Ala. 403, 31 So.2d 571; Alabama-Independent Service Station Assn. v. McDowell, 242 Ala. 424, 6 So.2d 502. * * *"

We think it equally clear that the same rule applies in situations where the accused is charged with violating a law which makes it a criminal offense to sell an article or commodity at an excessive price. In State v. Goldstein, 207 Ala. 569, 572, 93 So. 308, this court cites with approval the case of People v. Steele, 231 Ill. 340, 83 N.E. 236, where the court held as unconstitutional an act prohibiting the sale of a ticket by the manager of a theatre without carrying on its face an inhibition against its resale *at an advance,* and prohibiting such a resale, or keeping a place for carrying on such a business. The court said in *Steele,* supra, p. 352, 83 N.E. p. 239:

"* * * The broker's business is prohibited, because it has been made unlawful to make a profit. The public is no better nor worse off in health, morals, security, or welfare. These are arbitrary and unreasonable interferences with the rights of the individuals concerned. The business of the broker in theater tickets is no more immoral or injurious to the public welfare than that of the broker in grain or provisions. If he does not make the price satisfactory to intending purchasers, they are under no compulsion to buy. They have no right to buy at any price except that fixed by the holder of the ticket. The manager may fix the price arbitrarily, and may raise or lower it at his will. * * *"

In State v. Goldstein, supra, the act made it an offense for any dealer or any other person to sell or offer for sale any article or commodity of the classes named at a price which, in the estimation of a jury, would yield a grossly excessive profit to the seller. The court said:

"It is certain that, if the police power can regulate prices and profits in private business, or in casual transactions, whether directly by arbitrary schedules, or indirectly by the discretion of juries, by the simple expedient of branding as fraudulent any price that may be deemed grossly excessive by a jury, then the same power can, by the same expedient, control the selling price of every commodity, and the compensation to be paid for every kind of labor and professional service. This would be practical socialism and it would be the end of the American ideal of personal liberty as understood and enjoyed for more than a century under constitutional guaranties designed to protect the citizen against arbitrary and unnecessary governmental interference.

* * * * * *

"In our judgment this act, in so far as it relates to the prevention and punishment of profiteering, as defined in section 2, is a clear abuse of the police power, and is offensive to the declarations and guaranties of our Bill of Rights, and also to the Fourteenth

Amendment to the federal Constitution; and we hold it, to that extent, unconstitutional and void." *Goldstein, supra,* pp. 572–573, 93 So. pp. 313–314.

In *Goldstein, supra,* p. 571, 93 So. p. 312, the court further observed:

"'* * * What circumstances shall affect property with a public interest is not very clear. The mere fact that the public have an interest in the existence of the business, and are accommodated by it, cannot be sufficient, *for that would subject the stock of the merchant, and his charges, to public regulation.* The public have an interest in every business in which an individual offers his wares, his merchandise, his services, or his accomodations to the public; but his offer does not place him at the mercy of the public in respect to charges and prices.' (Italics supplied.)"

The court also stated in Bulova Watch Co. v. Zale Jewelry Co., 274 Ala. 270, 272, 147 So.2d 797, 799 as follows:

"It has been held that for an occupation or business to be affected with the 'public interest' the community at large must have some pecuniary or legal interest in the manner in which the business or occupation is conducted; or the person so engaged therein must have a virtual monopoly or an oligopoly in the business; or the business or occupation must have been conducted in such a manner as to cause the public to adapt their affairs to the methods utilized. (See Vol. 5, Words & Phrases, 'Business Affected with Public Interest', p. 1018)."

The business of barbering is not affected with a public interest, City of Mobile v. Rouse, 233 Ala. 622, 173 So. 266; Lisenba v. Griffin, 242 Ala. 679, 8 So.2d 175, nor is the business of operating a gasoline filling station, Alabama Independent Service Station Assn. v. McDowell, 242 Ala. 424, 6 So.2d 502.

The holding and judgment of the Court of Criminal Appeals is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX, FAULKNER, and JONES, JJ., concur.